STAUNTON v. CITY OF DETROIT.

1. Appeal and Error—Judgment Notwithstanding Verdict—Evidence.
    Testimony must be construed in light most favorable to plaintiff on appeal from a judgment for defendant notwithstanding verdict.

2. Same—Judgment Notwithstanding Verdict—Inconsistencies in Testimony.
    Inconsistencies or contradictory statements in testimony of witnesses do not bar application of rule that testimony must be construed in light most favorable to plaintiff on appeal from judgment for defendant notwithstanding verdict.

3. Automobiles—Speed—Assured Clear Distance Ahead—Weather Conditions.
    A motorist has no right to drive his vehicle at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead and where he exceeds such speed and weather conditions are such as to require special care and caution on his part, a jury would be entitled to find him guilty of negligence in causing injury to pedestrians (CL 1929, § 4697, as amended by PA 1939, No 318).

4. Same—Speed—Buses—Weather Conditions—Overtaking Vehicles—Blinking Taillight—Negligence.
    Evidence warranted jury in finding that defendant's eastbound

---

References for Points in Headnotes
[1, 2] 30 Am Jur, Judgments, § 57.
[3] 5 Am Jur, Automobiles, § 263.
[3] Driving automobile at a speed which prevents stopping within length of vision as negligence.   44 ALR 1403;  58 ALR 1493; 87 ALR 900; 97 ALR 546.
[4, 7, 8] 5 Am Jur, Automobiles, §§ 211, 212, 282.
[5, 7, 8] 5 Am Jur, Automobiles, §§ 450, 452.
[5, 7, 8] Contributory negligence of pedestrian at street crossing as affected by statute or ordinance. 96 ALR 786.
[6] 38 Am Jur, Negligence, § 192.

bus driver was guilty of negligence, where it appears he had been driving bus for 9½ hours before accident occurred at 6 p. m. late in November and weather conditions were such as to require the exercise of special care and caution in operating bus, that he swerved his bus to left of overtaken car whose taillights had been blinking for a sufficient time while he observed them to have stopped the bus and plaintiff southbound pedestrians had crossed midway on 40-foot street before being stopped by car overtaken by defendant's bus (CL 1929, § 4697, as amended by PA 1939, No 318).

5. SAME — PEDESTRIANS — CONTRIBUTORY    NEGLIGENCE — CROSSING STREET — BUSES — EVIDENCE — QUESTION FOR JURY.

Question of adult southbound pedestrian's contributory negligence was for jury, where it appears that she and her daughter had waited for westbound traffic to clear crossing at 6 p. m. late in November after street lights had been turned on and had proceeded with other persons midway across 40-foot pavement of street until an eastbound car stopped immediately in front of them and was followed by defendant's bus, admittedly traveling at speed of 35 miles an hour when special care and caution should have been used, swerved to left to avoid hitting car and injured plaintiffs, since pedestrian was not bound to anticipate such conduct on part of bus driver (CL 1929, § 4697, as amended by PA 1939, No 318).

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ANTICIPATION OF UNLAWFUL ACTS.

Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant, which are of an unlawful nature.

7. AUTOMOBILES—PEDESTRIANS—STREET CROSSINGS.

Pedestrians have the right to cross streets at street crossings even on a through street and are not required to anticipate that motorists will violate ordinances and statutes or rules of safety and motorists must anticipate presence of pedestrians at street crossings and have their vehicles under such control as to enable them to meet conditions which may be reasonably expected.

8. SAME—VERDICTS—EVIDENCE—PEDESTRIANS.

Judgments are ordered entered on verdicts for plaintiffs, a married woman and her minor daughter, pedestrians who were injured when defendant's bus overtook and swerved to left of standing car which had stopped immediately in

front of them as they were proceeding southward across street at 6 p. m. late in November, where verdicts were supported by record.

Appeal from Wayne; Murphy (George B.), J. Submitted January 4, 1951. (Docket Nos. 15, 16, 17, Calendar Nos. 44,784, 44,817, 44,818.) Decided March 1, 1951.

Separate actions of case by Mary Staunton, Mary Madeline Staunton and James Staunton against City of Detroit, Department of Street Railways, to recover damages suffered when first two plaintiffs were struck by defendant's bus. Verdicts for plaintiffs. Judgment for defendant *non obstante veredicto*. Plaintiffs appeal. Reversed and remanded for entry of judgments on verdicts.

*Temple, Brown, Temple & Williams* (*Robert J. De-Mund*, of counsel), for plaintiffs.

*James S. Shields* and *Leo A. Sullivan*, for defendant.

CARR, J. These cases were tried together in circuit court and on stipulation the appeals have been consolidated. Plaintiffs' causes of action arose from a traffic accident occurring in the city of Detroit on the 26th of November, 1946, about 6 o'clock in the evening. At the time the plaintiffs Mary Staunton and Mary Madeline, her 6-year-old daughter, were undertaking to cross the paved portion of Joy road at or near the intersection of that highway with Rutland avenue. It was their claim on the trial that they were struck and injured by a bus owned and operated by the defendant, and that the accident occurred because of negligence on the part of the bus driver. The proofs indicate that they left the

north side of Joy road and proceeded to the middle of the pavement, which was 40 feet in width, where the driver of an east-bound automobile brought his vehicle to a stop immediately in front of them. While they were standing, with others, beside the automobile in question, defendant's bus came from the west, behind the standing automobile, swerved to the north to avoid striking the car, and struck Mrs. Staunton and Mary Madeline, inflicting injuries for which they brought their respective suits to recover damages. The other plaintiff, the husband of Mary Staunton and father of Mary Madeline, also instituted suit to recover for their hospital and medical expenses and for the loss of the services of his wife in the home.

At the conclusion of plaintiffs' proofs counsel for defendant moved for directed verdicts, claiming that plaintiffs had failed to show negligence on the part of the bus driver and had also failed to establish freedom from contributory negligence. The motion was denied, without prejudice to the right of defendant to renew it at the conclusion of the proofs. Thereupon defendant introduced the testimony of witnesses, and the motion, on renewal, was taken under advisement in accordance with the provisions of the Empson act.[*]

Following submission of the cases to the jury verdicts were returned in the amounts of $3,000 for James Staunton, $7,000 for Mrs. Staunton, and $5,000 for Mary Madeline. Thereafter defendant made a motion for new trials, and also asked for judgments notwithstanding the verdicts. The latter motion was granted, the trial judge stating in his opinion "that the plaintiffs showed no actionable negligence on the part of the defendant driver; that plaintiffs were guilty of contributory negligence as a matter of law;

---

[*] See CL 1948, § 691.691 (Stat Ann 1949 Cum Supp § 27.1461).

that the proximate cause of the accident was plaintiffs' negligence, or, at least, the concurrent negligence of plaintiffs, and that the motions made by counsel for defendant at the end of plaintiffs' proofs, and at the end of all the proofs, for directed verdict of no cause for action, should have been granted." Judgment was thereupon entered for defendant against the 3 plaintiffs. An opinion was also filed by the trial judge denying the motion for a new trial.

On behalf of appellants it is urged that the trial court was in error in holding that plaintiffs' proofs were not sufficient to justify submitting to the jury the issues in the case. In considering the case we have in mind the well-established rule that on appeal from a judgment for a defendant notwithstanding the verdict of the jury the testimony must be construed in the light most favorable to the plaintiff. *Longfellow* v. *City of Detroit,* 302 Mich 542; *Wimmer* v. *Colman,* 307 Mich 413; *Waskelis* v. *Continental Baking Co.,* 310 Mich 649; *Swartz* v. *Dahlquist,* 320 Mich 135. Inconsistencies or contradictory statements in the testimony of witnesses does not bar the application of the rule. *Yampolsky* v. *Smith,* 320 Mich 647.

In their declarations the plaintiffs alleged that defendant's employee was operating the bus at an excessive rate of speed and in a careless and reckless manner, that he failed to keep a reasonable and proper outlook for others on the highway, and that he was driving in such a manner and at such speed that he was unable to stop within the assured clear distance ahead. Counsel specifically call attention to a provision of the motor vehicle law of the State, in effect at the time of the accident, appearing in CL 1929, § 4697, as amended by PA 1939, No 318 (Stat Ann 1945 Cum Supp § 9.1565), which read as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

It is urged by appellants that the testimony was sufficient to establish that defendant's bus driver violated the provisions of the statute in the operation of his vehicle, and that he was guilty of negligence in failing to exercise due and proper care under the circumstances. Emphasis is placed on the testimony of the driver, who was called by plaintiffs for cross-examination. He stated that on the day of the accident he had begun work at 6 o'clock in the morning, and that he had been actually engaged in driving a bus about 9½ hours prior to the occurrence in question. It is a fair inference from his statements that driving conditions were such as to involve some degree of nervous tension, and that at 6 o'clock in the evening he was weary. The pavement was wet at the time of the accident, and it was dark or nearly so. In describing the situation the witness said, in part:

"My headlights and the street lights were on. I was driving about 35 miles an hour at this point. As I approached the intersection at Rutland, there was considerable traffic going west whose headlights were quite bright, from which I was momentarily blinded. At this time I was between Rutland and Southfield on Joy road. I don't recall how far from Southfield, but quite a number of feet. I would guess anywhere between 8 to 20. Rutland and Joy road is not really an intersection. It is a jog in the street, and it is a long block from Southfield to Rutland. After my eyes focused back on the road from the blinding

lights, the first thing I seen was the red lights blinking. The drivers at the D.S.R. barns had been warned concerning a railroad crossing, which was further down the road from this intersection, and when I first seen these red lights blinking my first impression was that it was the railroad crossing, yet I know what the blinking lights were and knew it couldn't possibly be that or else it had been changed. I was in sort of a fog as to what they were and continued on at my usual speed in an easterly direction. I was still watching and trying to make out just what these lights were when I saw it was the taillights on this car. At that time the car was directly in front of me in the same lane, on the right of the right-hand lane. Joy road at this particular point is a four-lane highway. I don't know how wide it is, nor do I know whether or not it was divided down the center by a dividing line.

"Q. When you saw it finally and realized these lights were lights of a car ahead of you, how far ahead of you was that car at that time?

"A. I can't judge space. The car ahead of me was either stopped or was stopping because his taillights blinked, and at the same time I saw all these people who were running around in front and behind him. There must have been 15 or 20, at least. I don't know whether or not there were some that were not running. When I finally realized this was a car stopped in front of me, I hit my brakes. After I applied my brakes, the bus continued east. I skidded for an unknown distance and then realized I wasn't stopping as fast as I should, and I jackknifed my wheel to the left. I don't know how far in back of the standing car I was when I did this."

The witness further stated that he did not realize he was on cement until he undertook to apply his brakes. His testimony clearly indicated that he saw the red lights blinking on the rear of the automobile beside which Mrs. Staunton and Mary Madeline were standing. With reference to his conduct at that time,

the following excerpts from his testimony are significant.

"RECROSS-EXAMINATION
"*By Mr. Temple:*
"At the time I saw the lights blinking and didn't realize what they were, I continued at 35 miles an hour, and all of a sudden I realized those were lights of a car right in front of my car. I attempted to stop, swung to the left, and hit the girl.

"RECROSS-EXAMINATION
"*By Mr. Sullivan:*
"*Q.* Is there anything you could have done you didn't do to avoid this accident?

"*A.* Well, the only place I can see where I made my mistake was when I seen the lights first, before I visualized the car or the people. I should have applied my brakes then. When I saw the people I tried to stop and avoid the accident.

"RECROSS-EXAMINATION
"*By Mr. Temple:*
"*Q.* Witness, if you had applied your brakes when you first saw these blinking lights, you could have stopped your car long before you got to the stopped car or the people, isn't that true?

"*A.* Yes, sir. * * *

"RECROSS-EXAMINATION
"*By Mr. Temple:*
"*Q.* What does the blinking of 2 red lights on the back of a car usually designate?

"*A.* They are slowing up or going to stop.

"*Q.* And in spite of that blinking of the taillights of the car ahead of you, you didn't realize what it was, and you continued towards that car at 35 miles an hour until some time later you realized all of a sudden that it was a car in front of you?

"*A.* Yes, sir."

A young woman who was standing with Mrs. Staunton and Mary Madeline immediately prior to the accident was a witness on the trial, testifying

that in her opinion the bus was traveling approximately 55 miles an hour, and that when it passed her it brushed her coat. She also testified that the bus struck Mrs. Staunton and Mary Madeline. She stated that when she realized there was danger there was not time to go around the standing automobile "because the bus was coming too fast and getting close, and if I had gone behind the car I might have gone right in front of the bus." The testimony of Mrs. Staunton as to the general situation at the time of the accident is substantially in accord with that of the witness.

In *Pearce* v. *Rodell*, 283 Mich 19, the Court, in commenting on the statute, above quoted, said in part:

"The defendant had no right to drive his automobile on the public highway at the place and at the time the injury to plaintiff occurred at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead (CL 1929, § 4697, as amended by PA 1933, No 119 [CLS 1935, § 4697]); and it was *prima facie* unlawful for him to exceed that limitation in speed (CL 1929, § 4697, as amended by PA 1933, No 119 [CLS 1935, § 4697]). * * * It is clear if he was driving his automobile at a rate of speed so he could not bring it to a stop within the assured clear distance ahead, he was guilty of negligence as a matter of law. If defendant's vision was obscured by the glaring lights of the approaching automobile, it was his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary. *Budnick* v. *Peterson*, 215 Mich 678."

Of like import is *Holmes* v. *Merson*, 285 Mich 136.

The proofs in the case indicate that at the time of the accident weather conditions were such as to require special care and caution on the part of the driver of defendant's bus. *Suarez* v. *Katon*, 299

Mich 38.   After considering the evidence in the light of the charge of the trial court, the jury in the instant case concluded that the driver of the bus was guilty of negligence.   We think the testimony fully supports that conclusion.   The jury might well have found as a fact that defendant's vehicle was operated at a rate of speed that was excessive under the existing conditions, that the driver was not reasonably exercising his faculties in keeping an outlook for others on the highway, and that he was unable to stop his vehicle within the assured clear distance ahead.   The driver's testimony is such as to suggest that had he been exercising ordinary care the accident would not have occurred.   We think the trial court was in error in holding that plaintiffs' proofs were insufficient to require submitting the question of defendant's negligence to the jury.

May it be said, as a matter of law, that Mrs. Staunton failed to establish her freedom from contributory negligence?   The holding of the trial judge in this respect was apparently based, at least in part, on the fact that she undertook to cross the pavement on Joy road under the circumstances existing at the time.   However, the testimony indicates that she waited until westbound traffic had cleared and then, with others, proceeded to the middle of the pavement. At that point the automobile, before mentioned, stopped directly in front of her so that she was standing opposite the left-rear fender.   Had it not been for this incident it is a fair conclusion that the parties would have crossed the pavement in safety. It may not be said that she should have foreseen at the time she started across the street that her progress would be interfered with by a vehicle stopping directly in front of her.   Neither may it be said that she should have anticipated the subsequent conduct of the bus driver.

Defendant's vehicle was approaching behind the standing automobile. When its driver undertook to divert its course, Mrs. Staunton had but a brief time to avoid being struck by it. It is but natural that under the circumstances she became slightly confused, doubtless due in part to uncertainty as to the exact path that the bus would follow. Apparently she sought to protect Mary Madeline, and both were struck and injured. The testimony of plaintiffs' witness, hereinbefore referred to, fairly indicates the situation. The fact that Mrs. Staunton failed to avoid the bus may not be regarded under the circumstances as conclusively establishing negligence on her part. The question was for the jury.

In *Winckowski* v. *Dodge,* 183 Mich 303, 312, it was said:

"Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act."

The foregoing statement was quoted with approval in *Suarez* v. *Katon, supra.* In *Guina* v. *Harrod,* 275 Mich 393, the Court, in sustaining a verdict for the plaintiff in a case tried before the circuit judge without a jury, said:

"Pedestrians have the right to cross the street at street crossings even on a through street. They are not required to anticipate that drivers will violate ordinances, statutes or rules of safety. Drivers must anticipate the presence of pedestrians at street crossings and, when they so drive that they cannot see whether the crossing is clear, they must have their cars under such control as to meet conditions which may be reasonably expected. Defendant was negligent in approaching the crossing without proper control of the car in view of his inability to see conditions at the crossing."

See, also, *Holmes* v. *Merson, supra; Dasovich* v. *Longacre,* 324 Mich 62; *White* v. *Herpolsheimer Company,* 327 Mich 462.

Whether negligence on the part of the driver of defendant's bus was the proximate cause of the accident and whether plaintiffs' proofs established Mrs. Staunton's freedom from contributory negligence were, on this record, jury questions. The verdicts returned were supported by the record. We do not understand that counsel for defendant claim negligence on the part of Mary Madeline, barring, as a matter of law, her right to recover damages.

The judgment in favor of defendant is reversed, and the causes are remanded to the circuit court with directions to set aside such judgment and to enter judgments for the plaintiffs on the verdicts. Plaintiffs may have costs.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.