CARR v DETROIT EDISON COMPANY

1. STATUTES—CONSTRUCTION SAFETY ACT—SAFETY RULES.

    A company whose principal business is the production, transmission, and distribution of electrical energy is not subject to the general rules and regulations for the construction industry as promulgated pursuant to the Construction Safety Act because companies whose principal business is other than construction work are expressly excluded from the act's definition of the construction industry (MCLA 408.712[b]).

2. STATUTES—CONSTRUCTION SAFETY ACT—SAFETY RULES.

    A company engaged in building residences for sale on its own account rather than as a contractor would be classified, under the provisions of the standard industrial classification manual, as being in the real estate business and not the construction business and therefore is not subject to the general safety rules and regulations for the construction industry pursuant to the Construction Safety Act (MCLA 408.712[b]).

3. NEGLIGENCE—DIRECTED VERDICT.

    The standard to be applied in deciding a motion for a directed verdict in a negligence action is to take all of the facts and view them most favorably to the party opposing the motion and then decide whether reasonable men must agree on the question of negligence.

4. NEGLIGENCE—ELECTRIC COMPANY—BUILDING CONSTRUCTION SITE—STANDARD OF CARE.

    No duty arose on the part of an electric utility company to inform a contractor or his employees of the hazard of working near overhead transmission lines where the company had no knowledge that a crane was to be used at the construction site on the date in question and the contractor had failed to inform

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 13 Am Jur 2d, Building and Construction Contract §§ 132, 135.

[3, 6] 57 Am Jur 2d, Negligence §§ 7, 9

[4] 57 Am Jur 2d, Negligence §§ 66–93.

[5] 41 Am Jur 2d, Independent Contractors §§ 24–47.

the company of the use of equipment in close proximity to the lines.

5. MASTER AND SERVANT—INHERENTLY DANGEROUS ACTIVITY—INDE-PENDENT CONTRACTORS.

The owner of premises upon which construction work is being done is under no duty to a contractor's employees where the method and means of executing the work are entrusted to the independent contractor and his employees and where no control is exercised by the owner, even where the work can be assumed to be inherently dangerous.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—DI-RECTED VERDICT.

A statement by a trial judge when granting a motion for a directed verdict in a negligence action that the contributory negligence of the deceased was the proximate cause of the accident in question was not prejudicial where the issue of contributory negligence had nothing to do with the trial court's decision to grant the defendants' motions for a directed verdict since the judge began his statement with the words "parenthetically an additional item".

Appeal from Oakland, William P. Hampton, J. Submitted Division 2 June 4, 1973, at Lansing. (Docket No. 14857.) Decided August 30, 1973. Leave to appeal applied for.

Complaint by James L. Carr, administrator of the estate of Beattie E. Mellon, deceased, against the Detroit Edison Company and Edward Rose & Sons, Inc., for damages for wrongful death. Directed verdict for defendants. Plaintiff appeals. Affirmed.

*Frank R. Langton* (by *Frank R. Langton* and *Cynthia J. Boyer),* for plaintiff.

*Fischer, Franklin & Ford* (by *David G. Barnett* and *Leon R. Jones),* for defendant Detroit Edison Company.

*Dell, Shantz, Booker & Schulte,* for defendant Edward Rose & Sons, Inc.

Before: Holbrook, P. J., and Danhof and Adams,* JJ.

Per Curiam. Beattie Eugene Mellon was employed by Vettese Brothers Contracting Company (hereinafter referred to as Vettese Co.), subcontractors engaged by defendant Edward Rose & Sons, Inc. (hereinafter referred to as Rose, Inc.), to install cellar foundations for private residences. Rose, Inc. was the owner of the land upon which the residences were built and acted as general contractor for the construction of the homes.

On November 16, 1965, Vettese Co. was in the process of installing a cellar foundation for Rose, Inc. Power lines belonging to defendant Detroit Edison Company (hereinafter referred to as Edison) were located over the construction site. Beattie Mellon was the "hook-up man" whose job was to watch the crane being used to set forms for foundations to make sure it did not come into contact with the overhead wires. Mellon never signaled the crane operator that the crane was too close to the wires. It came into contact with them, and Mellon was electrocuted. This action for wrongful death resulted.

At the time of the accident, pursuant to the Construction Safety Act of 1963, MCLA 408.711 *et seq.;* MSA 17.469(1) *et seq.,* "General Safety Rules and Regulations for the Construction Industry" had been promulgated. Rule 1303 of these regulations dealt specifically with overhead wires. There was extensive testimony at the trial as to whether defendants had violated Rule 1303, and whether the work being done by deceased was inherently dangerous. At the close of all proofs, both defend-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ants moved for directed verdicts. The trial judge granted the motions. From such grant, plaintiff has appealed.

## Issue I

*Were defendants subject to "The General Rules and Regulations for the Construction Industry" and, if so, did the testimony create a question of fact as to whether violation of such safety rules proximately caused decedent's death?*

MCLA 408.712(b); MSA 17.469(2)(b) provided at the time of the accident:

"(b) 'Construction industry' means construction firms and contractors *(but not including firms or companies, whose principal business is other than construction work,* and whose construction work consists only of maintenance construction work performed on their own property by their own employees) *whose classification as construction industry is in accordance with the standard industrial classification manual* prepared by the technical committee on industrial classifications, office of statistical standards, 1957 edition, and who are subject to the workmen's compensation law other than by voluntary assumption of the law." (Emphasis added.)

The principal business of Edison is the production, transmission, and distribution of electrical energy. Edison is not defined as part of the construction industry by this statute. It is expressly excluded.

The opening paragraph of the introduction to the "Standard Industrial Classification Manual" states:

"Purpose of the Classification.

"The Standard Industrial Classification was developed for use in the classification of establishments by type of activity in which engaged; for purposes of facilitating

the collection, tabulation, presentation, and analysis of data relating to establishments; and for promoting uniformity and comparability in the presentation of statistical data collected by various agencies of the United States Government, State agencies, trade associations, and private research organizations."

The Manual's discussion of "contract construction" opens with the following paragraph:

"This division includes establishments primarily engaged in contract construction. The term 'construction' includes new work, additions, alterations, and repairs. Three broad types of contract construction activity are covered; namely, (1) building construction by general contractors, (2) other construction by general contractors, and (3) construction by special trade contractors. *Operative builders who build on their own account for resale or lease, and investment builders who build structures on their own account for rental, are classified in Major Group 65, Real Estate.*" (Emphasis added.)

The "Standard Industrial Classification Manual" defines "operative builders" as: "Builders primarily engaged in construction for sale on their own account rather than as contractors".

Rose, Inc. was engaged in building residences "for sale on their own account rather than as contractors". Under the provisions of the "Standard Industrial Classification Manual", Rose, Inc., would be classified as being in the real estate business and not the construction business. Therefore, neither Rose, Inc., nor Edison was subject to the safety rules and regulations known as the "General Safety Rules and Regulations for the Construction Industry".

Plaintiff nevertheless contends that evidence of the violation of such rules by Rose, Inc., or Edison would constitute evidence of negligence on their part. Rule 1303 of the "General Safety Rules and

Regulations for the Construction Industry" provides:

"Overhead electric power line.

"Equipment shall not be operated in close proximity to overhead electric power lines, until the owner of the lines has been notified and operation coordinated with them.

"In addition, such operations shall not be conducted unless 1 of the following conditions are satisfied:

"Power has been shut off and positive means taken to prevent lines from being energized.

"Equipment being used, or any part thereof, does not have the capability of coming within 10 feet of contacting lines. If equipment does have the capability of making contact, it shall be positioned and blocked so as to assure no part thereof can come within 10 feet of the line. A notice of the 10-foot limitation shall be posted at the operator's position.

"Public utility contractors working on overhead power lines shall be exempt from the proximity requirement."

It is plaintiff's contention that both Edison and Rose, Inc., violated the above regulation. In granting the motion for directed verdict on Edison's behalf, the trial court found that Edison was not apprised of the fact that a crane would be operated close to the electric wires on the date in question, and was not asked to take any precautions. The trial court further found that Rose, Inc., had absolutely no control over the work performed by Vettese Co.

The following review of the undisputed evidence confirms the findings of the trial judge:

Clare F. Andrews, chief of the Construction Safety Division, Department of Labor, testified that under the Construction Safety Act of 1963, *supra,* there was recognized one relationship, that of employer-employee. Andrews put responsibility

under the act on the superintendent in charge of the work, who has control over work operations and equipment.

Jack R. Rose, secretary of Rose, Inc., testified that a superintendent employed by Rose, Inc., was on the job at the time of the accident, with the responsibility of expediting and coordinating the various subcontractors. Rose stated that Vettese Co. excavated and poured the walls at the site of the accident. Gerald Durkin, the superintendent of Rose, Inc., had no authority to direct or control the actions of any employee of Vettese Co. There was no written contract between Rose, Inc., and Vettese Co.

Dominic Vettese, one of the owners of Vettese Co., testified that deceased was employed as a laborer. Rose, Inc., had no control over the equipment or the men of Vettese Co. Durkin assigned only the lots to be worked on. Dominic Vettese was in control whenever he was at the job site; otherwise Bob Osantowski, the crew leader, was in control. No one from Rose, Inc., had attempted to exercise any control over the men or equipment of Vettese Co.

On the morning of the accident, Dominic Vettese gave Osantowski instructions on where to place the crane and truck so as to avoid the hazard of the overhead wires. Vettese was not at the site at the time of the accident. The truck had not been placed where he had instructed. No one from Vettese Co. had informed Edison that a crane was at work at the construction site on the date of the accident. If the truck had been placed where Vettese had instructed, there would have been a 25-foot clearance between the wires and the crane.

Robert Osantowski, the crew leader for Vettese Co., testified that he, along with deceased and

three others, had been instructed on where to place the truck and the crane. The truck was not so placed because it got stuck, and the employees were going to move it after they had lightened its load. The only reason the truck was not moved after its load had been lightened was because the men forgot to move it. Osantowski did not call Edison on the day in question because he thought the equipment was in a safe position.

Dale Case was the crane operator at the time of the accident. On the morning of the accident, he and his coworkers discussed the overhead wires and the position of the truck and crane. Deceased was the "hook-up man", part of whose job was to signal when the crane was too close to the wires. Deceased never signaled that the crane was too close.

The standard to be applied in deciding a motion for a directed verdict is to take all of the facts and view them most favorably to the party opposing the motion and then decide whether reasonable men must agree on the question of negligence. See *Brown v Page,* 39 Mich App 50; 197 NW2d 74 (1972); *Mackey v Island of Bob-Lo Co,* 39 Mich App 64; 197 NW2d 151 (1972); *Simonetti v Rinshed-Mason Co,* 41 Mich App 446; 200 NW2d 354 (1972). Applying this standard to the uncontroverted facts in the present case, it is clear that the trial judge did not err in finding that neither defendant was guilty of negligence as a result of a violation of Rule 1303 or otherwise.

### Issue II

*Was there testimony creating a question of fact for the jury as to whether defendant Edison was negligent in not warning deceased or deceased's*

*employer regarding the danger in working close to the overhead transmission lines?*

Edison, since 1954, had assumed the duty of going to the field to communicate with construction workers at job sites about the hazards of working in close proximity to overhead transmission lines.

It is clear from Michigan case law that Edison was not negligent under these facts in maintaining the power lines in the vicinity of the construction work. *Koehler v Detroit Edison Co,* 383 Mich 224; 174 NW2d 827 (1970); *Dees v L F Largess Co,* 1 Mich App 421; 136 NW2d 715 (1965). In Prosser, Torts (4th ed), § 56, p 343, it is stated:

"Where the duty is recognized, it is agreed that it calls for nothing more than reasonable care under the circumstances. The defendant is not liable when he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to give aid to one whom he has no reason to know to be ill."

While Edison had engaged in a program to educate people in the construction industry regarding the dangers of working in close proximity to overhead wires, it is undisputed that Edison had no knowledge a crane was to be used at the construction site on the date in question. Since the contractor failed to inform Edison of the use of equipment in close proximity to the lines, no duty on the utility's part arose to inform the contractor or his employees of the hazard of working near overhead transmission lines, a hazard of which they were all admittedly well aware.

*Issue III*

*Did the testimony create a question of fact as to*

*whether or not the work performed by plaintiff's decedent was inherently dangerous?*

The doctrine of inherently or intrinsically dangerous activity, like the now extinct-in-Michigan doctrine of assumption of risk[1] grows increasingly more complex, involved, and confused with each litigated case.

The latest pronouncements by the Michigan Supreme Court are set forth in three opinions[2] in *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972). While all three opinions recognize the doctrine, they do not agree upon the extent to which it may be applied. For purposes of decision in this case, it may be noted that in *McDonough* Justices Black and Swainson signed the per curiam opinion, Justice Black added a separate addendum, Chief Justice Kavanagh's opinion was signed by him and Justice Adams, Justice Williams concurred with the per curiam opinion and the Chief Justice's, and Justice Brennan's opinion was joined in by Justice T. G. Kavanagh. Chief Justice Kavanagh wrote (p 449; 201 NW2d at 617):

"On the other hand, I find as quite cogent the reasoning of Justice T. E. Brennan's opinion, relating to reliance upon the independent contractor's and likewise his employees' expertise to perform the job and/or

---

[1] *See Felgner v Anderson,* 375 Mich 23; 133 NW2d 136 (1965).

[2] In *McDonough v General Motors Corp,* 388 Mich 430, 447; 201 NW2d 609, 616 (1972), Chief Justice Kavanagh wrote:

"I am unwilling to foreclose, by exclusive and restrictive reliance upon this doctrine, the applicability to this or future cases of other rules of tort law which affix liability upon the landowner who, for economic benefit or otherwise, engages an independent contractor and then negligently injures an employee of the independent contractor. To base liability of negligent landowners upon a single doctrine ignores the innumerable factual circumstances giving rise to the cause of action and varying relationships of the parties."

Query: Are not the other rules of tort law fully capable of meeting a plaintiff's claim in terms of duty, proximate cause, etc?

repairs for which they were hired. It is fair to assume that the landowner retains the independent contractor because of the latter's expertise to perform the task properly and carefully. Absent special factors, such as supervening control by the landowner, the method and means of executing the task are entrusted to the independent contractor and his employees."

Justice BRENNAN wrote (p 456; 201 NW2d at 620):

"Thus, if I employ a contractor to remove a tree stump from my yard by use of explosives, I am liable to my neighbor whose garage is damaged by the concussion. This is because it is I who have set the project in motion; it is I who have created the unusual peril; it is for my benefit that the explosives were used. As between myself and my neighbor, I ought not to be permitted to plead that it was the contractor's negligence and not my own which damaged his property.

"But if the contractor should blow up his own truck, I should not be liable. He is the expert in explosives and not me. I had neither the legal right nor the capability to supervise his work. The same would be true if the contractor's workman had injured himself, or been injured by the carelessness of a fellow workman or the negligence of his employer. Neither the contractor nor his employees are 'others', as contemplated in Cooley's statement of the rule. Indeed, they are privy to the contract which creates the peril."

It would therefore seem that a majority of five Justices are in agreement as to the limitation of the doctrine set forth above. For the purpose of passing on this issue, we assume that the work was inherently dangerous.[3] Applying *McDonough*

---

[3] The trial court found:

"There is testimony that high voltage electric wires are inherently dangerous but there is no testimony in this case from which the jury could find that the operation carried on with the crane was inherently dangerous because of the Detroit Edison line. The testimony is that there was sufficient room in which to work and that the workers

to the undisputed facts in this case, we conclude that "the method and means of executing the task [were] entrusted to the independent contractor and his employees", and that, absent any control by Rose, Inc., no duty to plaintiff arose.

### Issue IV

*Was it proper for the trial court to find as a matter of law that deceased's contributory negligence was the proximate cause of the accident in question?*

Plaintiff objects to the following statement by the trial court:

"Parenthetically an additional item, in addition the court finds after due consideration of the presumption of due care which is due the deceased, that there is clear evidence of contributory negligence and such contributory negligence was the proximate cause of the accident and the jury could not decide other than the decedent was in fact contributorily negligent."

Both defendants are correct in stating that this issue had nothing to do with the trial court's decision to grant the motions for a directed verdict. The judge begins his statement with the words "parenthetically an additional item". The issue is without merit.

Affirmed. Costs to defendants.

fully understood the dangers of wires and the importance of staying away from them."