# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE MOON, as Next Friend of ARYANNA
MOON, Minor,

        Plaintiff-Appellant,

v

ATHEER KADHIM-JAWAD AL-SABTI,

        Defendant-Appellee,

and

FARAH ALMOUSAWI,

        Defendant.

UNPUBLISHED
May 30, 2017

No. 330981
Ingham Circuit Court
LC No. 15-000120-NI

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

In this negligence action, plaintiff, as next friend of minor Aryanna Moon (plaintiff's daughter), appeals by right an order of the trial court granting summary disposition to defendant Atheer Kadhim-Jawad Al-Sabti (defendant)[1] pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand for further proceedings not inconsistent with this opinion.

Aryanna was struck by defendant's vehicle as she tried to cross Saginaw Street near to where it intersects Westmoreland Avenue in Lansing. There was no traffic signal at the Saginaw/Westmoreland intersection and it was not a marked cross walk, but there were curb cuts for pedestrian travel and the testimony supported that it was frequently used as a cross walk. Aryanna testified at her deposition that after a few minutes of waiting, the traffic flow diminished. She explained the vehicles that she observed were stopped at a "far off" traffic signal. Aryanna, however, was aware of a single car travelling in the curb lane which was closest to her. When that car turned left onto Westmoreland Ave, just before it reached where she was standing, she stepped into the street. Aryanna testified that she was not running but she was doing a "fast walk." Defendant's van was some distance behind the car that turned and was

---

[1] Defendant Farah Almousawi was dismissed from the case by stipulation.

-1-

traveling, according to the defendant, in the third lane. Aryana testified that she did not see the van before it struck her because her vision was blocked by the turning car. Similarly, defendant testified he did not see Aryanna until the moment of impact, which he maintained he could not avoid, as defendant claimed she ran out into the street and into the left side of his vehicle.

In granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10), the trial court cited Aryanna's testimony, which the court concluded;

> establishes that basically when she saw the left turning car to her right in the curb lane, she walked out into traffic and began to cross the road without assuring that the road was clear for her to cross. It obviously was not because Defendant's vehicle was there, and she walked out into that lane of travel and was struck or struck the Defendant's vehicle.

> I don't see here a factual dispute that is admissible to the jury. . . .

This appeal followed.

We review de novo the grant or denial of summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition motions brought under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition of all or part of a claim may be granted under the court rule when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When deciding a (C)(10) motion, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. "[A] trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition." *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005). If, after reviewing the evidence, "reasonable people could differ, the question properly is left to the trier of fact." *Mull v Equitable Life Assurance Soc*, 196 Mich App 411, 421; 493 NW2d 447 (1992).

To establish a prima facie case of negligence, a plaintiff has the burden to prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) causation, both but for and proximate cause, and (4) damages. *Poe v Detroit*, 179 Mich App 564, 568; 446 NW2d 523 (1989). With respect to the duty owed by a driver to pedestrians, "a motor vehicle operator . . . owes a duty . . . to exercise due care, i.e. to follow safety rules." *Id.*, at 571. Here, therefore, defendant (the motor vehicle operator) owed a duty to Aryanna (a pedestrian) to follow safety rules.

The term "safety rules" does not refer to a set body of universally applicable rules. Rather, it is a category into which rules from various sources and authorities are placed, depending upon the circumstances of a given situation. See, e.g., *Ritchie-Gamster v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999) (recreational sports safety rules); *Carr v Detroit Edison Co*, 49 Mich App 332; 212 NW2d 70 (1973) (construction industry safety rules). The safety rules applicable in the case at hand come from many sources, primarily the Michigan

Vehicle Code and local traffic ordinances. One safety rule from caselaw that has applicability to the present case is the following: "Drivers must anticipate the presence of pedestrians at street crossings, and, when they so drive that they cannot see whether the crossing is clear, they must have their car under such control as to meet conditions which may be reasonably expected." Staunton v Detroit, 329 Mich 516, 526; 46 NW2d 569 (1951).

Defendant testified at his deposition that on the day of the accident he had not consumed any alcohol or drugs prior to the accident, he had not taken any medication, he had no vision problems, he was not using his cell phone while driving, and he was of sound mind and "knew what was going on." He testified the weather was clear and the roads were dry. Defendant testified that the posted speed limit on the stretch of roadway in issue was 35 mph and he was traveling "somewhere between 25 and 30" mph.

Defendant explained that when driving on Saginaw Street, he had to keep a proper lookout for pedestrians trying to cross the road, regardless of whether a marked crosswalk existed. Accordingly, defendant testified, he was looking at everything in front of him as he drove, including the right and left curbs abutting the roadway. Defendant testified that there was nothing obstructing his vision of either the right or left side of the roadway.

Defendant testified that he told a police officer who responded to the accident scene that his view of Aryanna was obstructed by a car on his left, which was ahead of him on the one-way street. Defendant testified that he did not see Aryanna walking on the sidewalk or standing on the curb. Rather, defendant testified, he did not see Aryanna until he saw her "running into the street." Defendant said he hit his brakes and turned his steering wheel to the right, but he was unable to avoid the ensuing collision.

Witness Catherine Hunt, who was stopped in her vehicle at the corner of Westmoreland and Saginaw Streets at the time of the accident, testified at deposition that she saw Aryanna walking down the sidewalk on Saginaw Street. Hunt looked down at her phone as she waited for traffic to clear so she could turn left onto Saginaw Street and when she looked up, Aryanna was in the cutout of Saginaw Street, starting to cross the street. At that point, the blue van driven by defendant hit Aryanna. According to Hunt, the van was in the third lane of travel. Hunt testified that Aryanna had crossed two or three lanes of travel before she was hit. Hunt saw Aryanna rolling off the front of the van and is unsure where the initial impact of Aryanna's body was on the van. Hunt testified that Aryanna did not run into the street, but rather simply proceeded to walk into the street and was in the street when the van hit her, opining that the van should have seen her and should have been able to stop in time to avoid hitting her. Officer Michael Lam testified that he arrived at the scene of the accident, and it appeared that the impact took place in the lane second from the curb, approximately 2 or three car lengths east of the curb cut. Officer Lam testified that while there was a sidewalk and a curb cut at the intersection, it was not a marked crosswalk with any indication that traffic had to stop for pedestrians attempting to cross the street in that location. Officer Lam noted damage to defendant's vehicle on the side fender and the windshield.

The evidence creates a question of fact as to whether defendant was driving in a negligent manner. Given Officer Lam's testimony concerning the location of the accident as well as witness Hunt's testimony that Aryanna had walked into the street and the van had enough time to

see her and avoid the collision, it is questionable whether defendant anticipated the presence of a pedestrian at the street crossing and also whether he had his van "under such control as to meet conditions which may be reasonably expected." *id.* In other words, there is a genuine issue of material fact concerning whether defendant breached a duty owed to Aryanna. The trial court thus erred in granting defendant's motion.

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens