BEASLEY v WASHINGTON

Docket No. 95493. Submitted April 21, 1988, at Detroit. Decided July
    5, 1988.

Willie Beasley was involved in a collision of his van with a car
    driven by Denise M. Washington. Two days later he was riding
    a bicycle when it struck another vehicle. Willie Beasley and his
    wife, Lois Beasley, brought an action against Washington in
    the Wayne Circuit Court. At the close of plaintiffs' proofs,
    defendant moved for a directed verdict, which the court took
    under advisement. In closing argument, plaintiffs maintained
    that defendant was negligent, that this negligence proximately
    caused the injuries, and that, even if the second accident
    contributed to plaintiff's injuries, the injuries were indivisible
    so that the jury was duty bound to find the first accident to be
    the cause of all of the injuries. Defendant argued that she was
    not negligent and that, even if she had been negligent, the
    injuries were solely caused from the second accident. She
    additionally asserted that plaintiffs had failed to establish the
    threshold requirement for recovery under the no-fault act. The
    court instructed the jury to consider Willie Beasley's compara-
    tive negligence with respect to the second accident, for which a
    settlement had been reached. The jury returned a verdict on a
    special verdict form finding that Willie had not suffered a
    serious impairment of body function or permanent disfigure-
    ment but awarded him damages. The court accepted the ver-
    dict, interpreting it as a determination of no cause of action,
    and subsequently granted defendant's motion for a directed
    verdict and denied plaintiffs' motion for a new trial, James A.
    Hathaway, J. Plaintiffs appealed.

The Court of Appeals held:

1. The court erred in accepting the jury verdict. The verdict

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 et seq.
Am Jur 2d, New Trial §§ 29, 129 et seq.
Am Jur 2d, Trial § 1154.
See the Index to Annotations under New Trial; No-Fault Insurance,
    and Verdicts.

was inconsistent. The court should have reinstructed the jury or granted a new trial.

2. The court further erred in granting defendant's motion for a directed verdict. The Court of Appeals, in reviewing a trial court's denial of a defendant's motion for a directed verdict, must view the evidence in a light most favorable to the plaintiff and determine whether a prima facie case was established. If there were material issues of fact upon which reasonable minds might differ, they were properly submitted to the jury. The question whether a plaintiff suffered a serious impairment of body function must be submitted to the jury whenever the evidence would cause reasonable minds to differ as to the answer, even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries. In this case there was a material factual dispute over whether the injuries were the result of the first or second accident.

3. The court erred in allowing the jury to view a police report which was not introduced into evidence, and the plaintiffs were substantially prejudiced thereby.

4. It was proper for the jury to consider the comparative negligence of the injured plaintiff in both accidents, but the court's instruction on that point was confusing.

Reversed.

1. TRIAL — INCONSISTENT VERDICT — NEW TRIAL.

The general rule is that where a verdict in a civil case is inconsistent and contradictory it will be set aside and a new trial granted.

2. TRIAL — DEFECTIVE VERDICT — REMEDIES.

The proper remedy to correct a defective verdict is to either reinstruct the jury or order a new trial.

3. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's denial of a defendant's motion for a directed verdict, must view the evidence in a light most favorable to the plaintiff and determine whether a prima facie case was established; if there were material issues of fact upon which reasonable minds might differ, they were properly submitted to the jury.

4. INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION.

The question whether a plaintiff suffered a serious impairment of body function must be submitted to the jury whenever the evidence would cause reasonable minds to differ as to the

answer, even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries (MCL 500.3135; MSA 24.13135).

5. EVIDENCE — DOCUMENTS — APPEAL.
    Submitting to the jury documents not admitted into evidence does not constitute error requiring reversal unless the error operated to substantially prejudice a party's case.

6. NEGLIGENCE — PARTIES — EVIDENCE — JURY INSTRUCTIONS.
    A defendant in a negligence case may properly present evidence and argue that liability for the accident lies with a person who is not a party to the action; upon proof tending to establish liability in someone other than the parties to the action, the defendant is entitled to proper instructions to the jury incorporating its defense that liability lies with another.

*Bockoff & Zamler, P.C.* (by *Anne K. Flaherty*), for plaintiffs.

*Lewis, White & Clay* (by *Eric L. Clay* and *Camille L. Stearns*), for defendant.

Before: CYNAR, P.J., and GRIBBS and T. GILLESPIE,* JJ.

CYNAR, P.J. Plaintiffs, Willie and Lois Beasley, appeal as of right from a September 5, 1986, order denying their motion for a new trial. We reverse and remand for a new trial.

Mr. Beasley (plaintiff) testified that, on September 8, 1981, between 5:00 and 6:00 P.M., he was driving his 1965 Chevrolet van west on Six Mile Road. At the intersection of Six Mile and Wildemere, in the City of Detroit, his vehicle collided with the 1979 Eldorado driven by defendant. Defendant left the scene of the accident to take her five-year-old son to the hospital.

Plaintiff remained on the scene and told the police officers about the accident. After the acci-

* Circuit judge, sitting on the Court of Appeals by assignment.

dent, plaintiff refused medical treatment. Plaintiff stated that, although his head hurt and was throbbing and he had a bump on his head, he refused to see a doctor despite being urged by his family to do so. In fact, plaintiff went to work the following day, working the afternoon shift from 3:30 to 11:30 P.M. When he got off work, he tried to catch a bus home. Plaintiff waited thirty to forty-five minutes for a bus. No bus came. Subsequently, he walked home from the bus stop.

Two days after this accident, on September 10, 1981, plaintiff rode his daughter's bicycle to work, a distance of over ten miles. Plaintiff worked the afternoon shift and rode the bicycle back home. During the return trip, plaintiff had a second accident at the intersection of Greenfield and Glendale Roads. He stated that he rode the bicycle to the top of the hill near the intersection and apparently blacked out. He did not remember anything about the second accident. He just recalled waking up at the hospital.

The driver of the vehicle involved in the second accident, Thomas Ledbetter, testified as to how this particular accident took place. Ledbetter stated that, while he was stopped at the "Stop" sign at the intersection of Greenfield and Glendale, plaintiff's bicycle ran into his vehicle. Plaintiff was flung across the front hood of the truck, landing on the road. Ledbetter did not see plaintiff until the impact.

After the second accident, plaintiff was taken to Mount Carmel Mercy Hospital. Plaintiff was examined by Dr. Blaise U. Audet. X-rays were taken and they revealed that plaintiff had suffered multiple linear skull fractures. Plaintiff was admitted into the hospital.

While in the hospital, plaintiff complained of nausea, vomiting and headaches. A CAT scan was

ordered. The CAT scan results showed that plaintiff had an epidural hematoma (blood clot) between the skull and the surface of the brain. In order to alleviate this condition, plaintiff underwent a right frontal craniotomy, surgery to evacuate the hematoma to relieve pressure to the brain. The surgery left plaintiff with a scar on his right front scalp area. For nearly one year, plaintiff showed an abnormal EEG (electroencephalogram) indicating "brain suffering."

Following the presentation of plaintiffs' proofs, defendant moved for a directed verdict. Defendant alleged that the plaintiffs had not met their burden by establishing the threshold for recovery under the no-fault act, MCL 500.3135; MSA 24.13135, which requires plaintiffs to show a serious impairment of body function or permanent serious disfigurement. The trial court took defendant's motion under advisement and told defense counsel to proceed with defendant's case.

In closing argument, plaintiffs maintained that defendant was negligent and that this negligence proximately caused plaintiff's injuries. Plaintiffs alleged that, even if the second accident contributed to plaintiff's injuries, the injuries were "individable" so that the jury was duty bound to find the first accident to be the cause of all of the injuries. Plaintiffs sought damages totalling $204,000.

Defendant argued that she was not negligent. Further, defendant alleged that, even if she had been negligent, plaintiff's injuries were caused solely from the second accident. Additionally, defendant asserted that plaintiffs had failed to establish the threshold requirement for recovery under the no-fault act.

The jury reached its verdict on a special verdict form. The jury found that plaintiff had not suf-

fered a serious impairment of body function or permanent disfigurement. Nevertheless, the jury proceeded to award plaintiffs $40,000 in damages. The trial court accepted the verdict, interpreting it as a determination of no cause of action. Subsequently, on January 31, 1986, the trial court reconvened to rule on defendant's directed verdict motion. After hearing argument, the court granted the motion.

Plaintiffs moved for a new trial. The trial court denied their motion on September 5, 1986. The instant appeal followed.

First, plaintiffs argue that the trial court erred by denying their motion for a new trial on the basis that the trial court clearly recognized that the jury had reached an inconsistent verdict and yet did not resubmit the case to the jury with further instructions. We agree.

It is within a trial court's sound discretion to grant or deny a motion for new trial. *Murphy v Muskegon Co*, 162 Mich App 609, 616; 413 NW2d 73 (1987). Absent an abuse of such discretion, the trial court's decision cannot be interfered with on appeal. *Kailimai v The Firestone Tire & Rubber Co*, 398 Mich 230; 247 NW2d 295 (1976).

After the jury finished with their deliberations, they returned the following verdict on the prepared special verdict form:

### FORM OF VERDICT

We, the jury, make the following answers to the question submitted by the Court.

1. Was the Defendant negligent?     Yes _x_ No___

2. Was the Defendant's negligence a proximate cause of an injury to the plaintiff?

Yes_x_ No___

If you answer "No," do not answer any further questions.

3. Did the injury which Plaintiff suffered result in permanent serious disfigurement or serious impairment of body function?                    Yes___No _x_

If your answer is "No," do not answer any further questions.

4. What is the total amount of Plaintiff's damages?          $40,000

5. Was the Plaintiff negligence [sic]?                    Yes _x_ No___

If your answer is "No," do not answer any further questions.

6. Was the Plaintiff's negligence a proximate cause of injury to the Plaintiff?               Yes _x_ No___

If your answer is "No," do not answer any further questions.

7. Using 100% as the total combined negligence which approximately [sic] caused the injury to the Plaintiff, what percentage of such negligence is attributable to the Plaintiff?                 49%

Please note that the Court will reduce the total amount of Plaintiff's damages entered in question number 4 by the percentage of negligence attributable to Plaintiff, if any, entered in question number 7. The remainder will be the amount which Plaintiff is entitled to recover.

8. What is the total amount of
   Mrs. Beasley's damages?          -0-

The no-fault act requires a plaintiff to establish
a threshold of death, serious impairment of body
function, or permanent serious disfigurement be-
fore recovery is permitted, MCL 500.3135; MSA
24.13155 . As the verdict form indicates, the jury
found that plaintiffs had not established the
threshold for recovery. Yet, despite the fact that
the jury found no serious impairment of body
function or permanent serious disfigurement, the
jury proceeded to award damages.

The trial judge recognized the inconsistent na-
ture of the verdict but he did not resubmit the
case to the jury with further instructions. Instead,
he accepted the verdict and interpreted it as a
determination by the jury that plaintiffs had no
cause of action.

Initially, we must determine whether the jury
verdict was inconsistent. "[I]t is fundamental that
every attempt must be made to harmonize a jury's
verdicts. Only where verdicts are so logically and
legally inconsistent that they cannot be reconciled
will they be set aside." *Granger v Fruehauf Corp,*
429 Mich 1, 9; 412 NW2d 199 (1987).

In *Harrington v Velat,* 395 Mich 359, 360; 235
NW2d 357 (1975), the Supreme Court stated the
following regarding inconsistent verdicts:

> The trial judge in a civil case can correct a
> verdict which is defective or erroneous as to a
> mere matter of form not affecting the merits or
> rights of the parties so as to give effect to what the
> jury unmistakably found. 76 Am Jur 2d, Trial,
> § 1208.
> However, the general rule is that where a ver-

dict in a civil case is inconsistent and contradictory, it will be set aside and a new trial granted.

"Ordinarily, a verdict may and should be set aside and a new trial granted where it is self-contradictory, inconsistent, or incongruous, and such relief should, as a rule, be granted where more than one verdict are [*sic*] returned in the same action and they are inconsistent and irreconcilable." 66 CJS, New Trial, § 66, pp 197-198.

In this case, the jury found plaintiff's total damages to be $40,000 after finding plaintiff did not suffer injury resulting in permanent serious disfigurement or serious impairment of body function. In order to reconcile the verdict, one needs to assume either that the jury did not understand the threshold requirement under the no-fault act or that they erred in completing the form. We conclude that this verdict was inconsistent.

The proper remedy to correct a defective verdict is to either reinstruct the jury or order a new trial. *Farm Bureau Mutual Ins Co v Sears, Roebuck & Co*, 99 Mich App 763, 766; 298 NW2d 634 (1980). In this case, the trial judge, although recognizing the inconsistent nature of this verdict, refused to further instruct the jury to deliberate or grant a new trial. Although we favor the *Granger, supra,* policy that a jury's verdict should be harmonized, in this case, it is too difficult to ascertain the intention of the jury in rendering this verdict. Therefore, we order a new trial.

In addition, the trial court erred in granting defendant's directed verdict motion once the jury rendered its verdict. Although the court deemed this a directed verdict, procedurally speaking, the court essentially issued a judgment notwithstanding the verdict, as provided for in MCR 2.610. However, in *Farm Bureau, supra,* this Court noted that judgment notwithstanding the verdict is im-

proper when the trial court is faced with an inconsistent verdict.

However, had the trial court granted the directed verdict motion at the close of plaintiffs' proofs, it would nonetheless have been error. In reviewing a trial court's denial of a motion for a directed verdict, we view the evidence in the light most favorable to the nonmoving party and determine whether a prima facie case was established. If there were material issues of fact upon which reasonable minds could differ, they were properly admitted to the jury. *Hall v Citizens Ins Co of America,* 141 Mich App 676, 682; 368 NW2d 250 (1985).

In *DiFranco v Pickard,* 427 Mich 32, 38-39; 398 NW2d 896 (1986), the Supreme Court stated that the threshold issue under the no-fault act must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ on whether plaintiff's injuries were a serious impairment of body function, even if there is no material factual dispute as to the nature and extent of plaintiff's injuries.

In this case, there was a material factual dispute regarding whether plaintiff's epidural hematoma and linear skull fractures were as a result of the first or second accident. More importantly, however, the central dispute at trial was whether these injuries constituted a serious impairment of body function or a permanent serious disfigurement. Therefore, the trial court's grant of defendant's directed verdict motion was erroneous.

Thirdly, plaintiffs argue that it was error to provide the jury with a copy of the police report describing the first accident since it had not been received into evidence. We agree.

In *Eley v Turner,* 155 Mich App 195; 399 NW2d 28 (1986), the deliberating jury was provided with

a copy of the defendant's driving record, which had been ruled inadmissible at trial. In *Eley,* this Court reaffirmed the proposition that submitting to the jury documents not admitted into evidence does not constitute error requiring reversal unless the error operated to substantially prejudice the party's case. See *People v Allen,* 94 Mich App 539, 543-544; 228 NW2d 451 (1980), lv den 411 Mich 1044 (1981), and *People v Jones,* 128 Mich App 335; 340 NW2d 302 (1983).

In this case, we find that plaintiffs were substantially prejudiced by submission of the police report to the jury especially since it had not been properly admitted into evidence. Plaintiffs' counsel was not afforded an opportunity to question the factual conclusions on the report. The jury's determination that plaintiff was forty-nine percent negligent was probably affected by the notation on the report showing that plaintiff was assessed a hazardous action number and that plaintiff's van left forty feet of skid marks. Thus, a new trial is warranted.

Finally, plaintiffs claim that it was error to instruct the jury to consider plaintiff's comparative negligence with respect to accident two since a settlement had been reached in that case. Defendant claims that it was proper for the jury to consider plaintiff's comparative negligence in accident number two since plaintiffs argued that the injuries sustained in the second accident were indivisible from the injuries in the first accident.

In *Esparza v Horn Machinery Co,* 160 Mich App 630, 638; 408 NW2d 404 (1987), lv den 428 Mich 919 (1987), this Court stated that it is perfectly proper for a defendant in a negligence case to present evidence and argue that liability for an accident lies elsewhere, even on a nonparty. Thus, in this case, it was proper for the jury to consider

whether accident number two was the sole cause of plaintiff's injuries or a partial cause.

However, we conclude that it was error to instruct the jury to reduce the damage award by plaintiff's comparative negligence in accident number two since the instruction was confusing. Although instructing the jury to reduce the damage award at one point, the trial court also instructed the jury not to concern itself with reduction of the damage award from accident number two.

Although there is no case law directly on point, the discussion, in part, in *Rittenhouse v Erhart,* 424 Mich 166, 187, n 11; 380 NW2d 440 (1985), applies here by analogy:

> The dissent interprets the instruction "[u]sing 100 percent as the total combined negligence which proximately caused the injury or damage to the plaintiff" to mean that the jury considered plaintiff's comparative fault in respect to all tortfeasors, whether present at trial or not. In *Mayhew, supra,* where the nonsettling defendant was seeking to apportion fault to a settling tortfeasor, we said:
>
> "[N]umerous difficulties would be presented if we were to allow the jury to apportion damages among all tortfeasors, including a settling non-party. It would mean that the settling tortfeasor's liability would be assessed without anyone adequately representing that interest. It would put the plaintiff in a unique trial situation. The plaintiff would not only have to advocate that he was not at fault, he would have to convince the jury that the non-party was only minimally at fault. Otherwise, there might be too great a percentage of fault attributed to the non-party, thus reducing the plaintiff's recovery." 414 Mich 412.
>
> If as we said in *Mayhew,* it would be difficult for the plaintiff to try to defend against the relative fault of a nonparty defendant, how, indeed can we expect the plaintiff in this situation to defend

against his contributory negligence vis-à-vis non-party defendants. If the instructional reference to "total combined negligence" was interpreted to include the negligence of nonparty tortfeasors, it would be left to the plaintiff and defendant to argue the relative negligence of the nonparty tortfeasors, notwithstanding the "numerous difficulties" alluded to in *Mayhew*.

We note that in *Rittenhouse, supra,* and *Mayhew v Berrien Co Rd Comm,* 414 Mich 399; 326 NW2d 366 (1982), the causes of action arose out of a single event, unlike in our case. However, we conclude that, in this case, the trial court's instructions were erroneous because they were confusing since they advised the jury to reduce the damage award by a percentage of plaintiff's negligence (if any) from the second accident. At the same time, the court instructed the jury not to concern itself with reducing the damage award since the court would take care of that matter. We believe that these instructions left the jury in a state of confusion as to their proper role in determining the effect of the second accident with respect to the damage award.

Reversed.