MITCHELL v COLE

MITCHELL v DEPARTMENT OF CORRECTIONS

Docket Nos. 97210, 97211, 98905, 98906. Submitted December 7, 1988, at Lansing. Decided April 3, 1989.

Beverly A. Mitchell, a staff member of the Michigan State Employees Association, was assigned to represent Cynthia Horning and Joan Plecha, employed as nurses at the Huron Valley Men's Facility, in various disciplinary charges and grievances involving Dr. Kenneth Cole, the medical director at the facility, Robert B. Redman, the warden of the facility, James Pogates, the deputy warden, and others. Cole scheduled a meeting with Mitchell and Horning to discuss a grievance Horning had filed against Cole. Cole wanted to meet Mitchell and Horning in his office in a secured area of the prison, which meant that the women would have to go through a pat-down search. Mitchell did not want to be subjected to a search, and met with Redman to see if she could get a conference room in a nonsecured area. After the unsuccessful meeting with Redman, Mitchell called her supervisor and they decided to reschedule the meeting. As part of the procedure for entrance to the secured area, Mitchell had given the staff her driver's license number. A Law Enforcement Information Network check revealed that there was an outstanding bench warrant for Mitchell for a traffic violation. When Mitchell returned to the facility several days later for another meeting with Cole, the state police were contacted by Pogates and told of the bench warrant. An officer appeared at the meeting and arrested Mitchell. After being taken to the trooper's car, Mitchell informed him that the warrant was for an unpaid traffic ticket. The trooper accepted $10 as a bond and released Mitchell. Mitchell never returned to the prison after that day. Both Horning and Plecha subsequently left their jobs at the prison. Mitchell, Horning, Plecha, and the MSEA filed suit

REFERENCES

Am Jur 2d, Abuse of Process §§ 1, 4, 12, 25, 26; Appeal and Error §§ 545 *et seq.*, 882; Civil Rights §§ 21, 25, 261, 264, 268, 269, 278; Conspiracy §§ 49 *et seq.*; Constitutional Law § 496 *et seq.*; Damages §§ 813-818; States, Territories, and Dependencies §§ 99 *et seq.*; Trial §§ 463-504.

against Cole, Redman, Pogates, the Department of Corrections and others in the Wayne Circuit Court alleging various claims in tort and violations of plaintiffs' constitutional rights and the federal Civil Rights Act. In addition, plaintiffs filed suit against the Department of Corrections in the Wayne Circuit Court sitting as the Court of Claims. The MSEA subsequently was dismissed as a plaintiff. The jury in the circuit court action awarded plaintiffs $31,500 in punitive damages and $120,000 in compensatory damages against Cole and $13,500 in punitive damages and $40,000 in compensatory damages against Pogates. The court, Dalton A. Roberson, J., trebled the compensatory damages pursuant to MCL 600.2907; MSA 27A.2907 and awarded plaintiffs costs and attorney fees. In the Court of Claims action, the court, Dalton A. Roberson, J., awarded $150,000 to Mitchell and $25,000 each to Horning and Plecha. These amounts were also trebled, and costs and attorney fees were awarded. The defendants in each action appealed, and the plaintiffs cross-appealed. The appeals have been consolidated.

The Court of Appeals *held:*

1. The trial court did not err in not dismissing the claims based on a violation of the administrative rule regarding the LEIN procedure or an abuse of process.

2. The jury did not err in finding a conspiracy between Pogates and Cole to misuse the LEIN process.

3. The court did not err in not dismissing plaintiffs' claim that defendants violated their First Amendment rights. There was sufficient evidence for the jury to find a violation.

4. Defendants' arguments that the jury's findings as to plaintiffs' other federal claims based on the federal Civil Rights Act are erroneous are without merit.

5. The court did not err in granting a directed verdict in favor of defendants as to MSEA's claim that defendants' actions affected MSEA's reputation and discouraged union activity. There was no evidence that MSEA was harmed.

6. Defendants Cole and Pogates were not entitled to qualified immunity on the federal claims. Their conduct violated clearly established constitutional rights, and the facts do not indicate that a reasonable person in defendants' position could have believed his actions were consistent with the law. The court did not err in not recognizing qualified immunity in these circumstances.

7. The compensatory damages awarded in these cases should not have been trebled under MCL 600.2907; MSA 27A.2907. That statute applies to malicious prosecution, not abuse of

process. This case involves abuse of process. The matter is remanded to the trial court for the necessary adjustment.

8. On remand, the circuit court is to determine whether defendants are correct that, if the special verdict form indicates that Mitchell's claim under the state Civil Rights Act was not upheld, attorney fees should not have been awarded pursuant to that act. If the court determines that the jury did not find a civil rights violation under the state act, the order needs to be corrected regarding fees.

9. On remand, the court should also address the reasonableness of the attorney fees awarded pursuant to 42 USC 1988. The court in this case enhanced the fee awarded.

10. The trial court did not err in not giving defendants' requested jury instruction that would have supplemented the definition of intentional infliction of emotional distress. The instruction given adequately and fairly represented the applicable standard.

11. The Court of Claims correctly determined that the Department of Corrections was entitled to governmental immunity as to plaintiffs' federal constitutional claims. The state is not a "person" for purposes of a damage suit brought under 42 USC 1983.

12. The Court of Claims erred in not dismissing plaintiffs' tort claims against the Department of Corrections on the basis of governmental immunity. The general activity involved, a LEIN check, was an authorized governmental function.

13. Plaintiffs' argument that their tort claims come under the nuisance exception to governmental immunity was not raised at the trial level and will not be addressed on appeal.

14. Plaintiffs' cross-appeal of the Court of Claims dismissal of their state Civil Rights Act claim is without merit. The circuit court has exclusive jurisdiction over claims brought under the state Civil Rights Act.

15. The Court of Claims erred in trebling the damages awarded. The matter is remanded to the court for the appropriate adjustment.

Affirmed in part, reversed in part, and remanded.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

A defendant's motion for a directed verdict may be properly denied and the issues presented to the jury where the plaintiff establishes a prima facie case and there are material issues of fact upon which reasonable minds may differ.

2. EVIDENCE — SUFFICIENCY OF EVIDENCE.

The standard of review of a claim of insufficiency of the evidence

requires that the evidence be viewed in the light most favorable to the nonmoving party, giving that party the benefit of every reasonable inference that can be drawn from the evidence; if, after viewing the evidence in this manner, reasonable men could differ, the question is one for the jury.

3. PROCESS — ABUSE OF PROCESS — TORTS.

The elements of an abuse of process claim are (1) an ulterior purpose and (2) a misuse of process.

4. CONSPIRACY — HARASSMENT — INTIMIDATION — COMMON-LAW CONSPIRACY.

Knowledge of a person's intention to harass and intimidate another and encouragement or ratification of that action is sufficient to support a finding of common-law conspiracy.

5. CONSTITUTIONAL LAW — FIRST AMENDMENT.

The First Amendment protects an individual's right to speak freely, advocate ideas, and associate with others and protects the right of an association to engage in advocacy on behalf of its members (US Const, Am I).

6. CIVIL RIGHTS — CONSPIRACY — DEPRIVATION OF CIVIL RIGHTS.

A plaintiff must prove (1) the existence of a conspiracy, (2) intent to deny the plaintiff the equal protection of the laws or of equal privileges and immunities under the law, (3) injury or deprivation of a federally protected right of the plaintiff, (4) an overt act in furtherance of the object of the conspiracy, and (5) some racial or other class-based invidiously discriminatory animus behind the conspirators' actions in order to establish a claim under 42 USC 1985.

7. CIVIL RIGHTS — CONSPIRACY — DEPRIVATION OF CIVIL RIGHTS.

A plaintiff must show that someone had the power to prevent a conspiracy and did not in order to establish a claim under 42 USC 1986.

8. CIVIL RIGHTS — PLEADING — GOVERNMENT OFFICIALS — QUALIFIED IMMUNITY.

In addressing the issue of qualified immunity in an action brought under 42 USC 1983, trial courts must consider objective factors: whether the alleged conduct establishes a constitutional violation and whether the constitutional standard was clearly established at the time in question; if the undisputed facts show that the defendant's conduct violated no clearly established constitutional standards, qualified immunity applies as a matter of law; if the law was clearly established, however,

the immunity defense will fail unless it can be proved that, because of extraordinary circumstances, the defendant government official neither knew nor should have known the relevant legal standard.

9. Process — Abuse of Process — Malicious Prosecution — Damages — Trebling of Damages.

Abuse of process is not the same as malicious prosecution, and the statute which allows trebling of damages in malicious prosecution actions does not apply to abuse of process actions (MCL 600.2907; MSA 27A.2907).

10. Attorney and Client — Attorney Fees — Increase in Fees.

An award of attorney fees may be adjusted upward if the fee applicant can show that such an adjustment is necessary.

11. Governmental Immunity — Pleading.

Governmental immunity is not an affirmative defense but, rather, a characteristic of government which prevents imposition of tort liability; the burden is on the plaintiff to plead affirmatively in avoidance of governmental immunity in stating its claim.

12. Civil Rights — Deprivation of Civil Rights — State.

The state is not a "person" for purposes of a damage suit brought under 42 USC 1983.

13. Governmental Immunity — Department of Corrections — Misuse of Law Enforcement Information Network Information.

The Department of Corrections was entitled to governmental immunity where its employees ran a Law Enforcement Information Network check as part of their duties in maintaining security at a prison but then misused that information to harass and intimidate the person involved; the general activity involved, i.e., the LEIN check, was an authorized governmental function.

14. Appeal — Preserving Question.

An issue may not be raised for the first time on appeal.

15. Civil Rights — Jurisdiction — Circuit Court.

The circuit court has exclusive jurisdiction over claims involving violations of the state Civil Rights Act (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

16. Governmental Immunity — Constitutional Rights — State's Violation of Rights — State Court Actions.

Governmental immunity is not available in a state court action

where the allegations concern the state's violation of rights conferred by the Michigan Constitution.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *David D. Waddell*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patricia L. Sherrod* and *A. Peter Govorchin,* Assistant Attorneys General, for defendants.

Before: DANHOF, C.J., and HOOD and R. L. TAHVONEN,* JJ.

HOOD, J. This is an appeal as of right from consolidated cases heard in the Wayne Circuit Court. The cases concerned various actions primarily taken by defendants Dr. Kenneth Cole and James Pogates, employees at the Huron Valley Mens' Facility, and their impact on two nurses employed at that facility, plaintiffs Cynthia Horning and Joan Plecha, and plaintiff Beverly A. Mitchell, who was their MSEA union representative. Docket Nos. 97210 and 98906 concern claims heard in the circuit court alleging various claims in tort and violations of plaintiffs' constitutional rights and the federal Civil Rights Act. In that action, the jury awarded the plaintiffs a total of $205,000 in damages, with Cole liable for $151,500 and Pogates liable for $53,500. The trial court trebled the compensatory damages and awarded attorney fees.

Docket Nos. 97211 and 98905 were heard by the circuit court judge sitting as a Court of Claims judge for claims brought against the Department of Corrections. In that case the court awarded $150,000 to plaintiff Mitchell and $25,000 each to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Horning and Plecha. These amounts were also trebled, for a total award of $600,000.

These cases arise from an alleged improper use of the Law Enforcement Information Network and information obtained thereby by defendants Cole and Pogates in order to intimidate and harass the plaintiffs. Pogates was the deputy warden. Dr. Kenneth Cole was the medical director. Robert B. Redman was the warden at Huron Valley. Cynthia Horning and Joan Plecha were employed as nurses at Huron Valley and were members of MSEA, a labor organization. Beverly Mitchell was a staff member of MSEA and assigned to represent Plecha and Horning in various disciplinary charges and grievances involving Cole.

Horning's relation to Cole involved an investigation concerning improper medical decisions allegedly made by Cole. Cole had charged Horning with conduct unbecoming a state employee, alleging that she had given documents to the state Officer of Health Care, which had prompted the investigation. Mitchell represented Horning at a fact-finding hearing on the disciplinary charges brought by Cole. Mitchell was also assigned to represent Plecha at a separate disciplinary proceeding. Events on two separate days form the factual basis for plaintiffs' claims.

On February 14, 1983, Cole scheduled a meeting with Mitchell and Horning with regards to a grievance that Horning had filed against Cole. Apparently Cole told Mitchell he wanted to meet in his office in a secured area of the prison. In order to go to a secured area a person had to go through a pat-down search. Since Mitchell was wearing a skirt, this would have included being searched underneath the skirt. The search was to take place in a glass enclosure and would have been visible to anyone in the area. There were visitors, employ-

ees, and prisoners in the area. Under certain circumstances a strip search or body cavity search could be requested. Mitchell did not want to go through a search and had a meeting with Redman, the warden, about getting a conference room in a nonsecured area. Redman acquiesced in Cole's actions. When she returned from seeing Redman, Mitchell called her supervisor and it was decided to reschedule the meeting. Previously, Mitchell had attended a hearing in a conference room in a nonsecured area and a search had not been required. As part of the procedure for entrance to the secured area on the February 14 visit, Mitchell had given the staff her driver's license number. A subsequent LEIN check had revealed an outstanding bench warrant for Mitchell for a traffic violation. No action was taken at that time. On February 24, 1983, a meeting was scheduled at the prison between Cole and Mitchell regarding charges against Plecha. When Mitchell returned on the 24th, the state police were contacted by Pogates and told of the bench warrant. An officer appeared at the meeting and proceeded to arrest Mitchell on the traffic violation.

It was the treatment of Mitchell and the resulting effects of defendants' action on all the plaintiffs which formed the basis for this action.

We begin with a consideration of the issues tried in the circuit court.

I

Our review is initially hampered by defendants' failure to specify the standard of review we are being asked to apply. Some issues appear to challenge the sufficiency of the evidence while some challenge the fact that the claims were sent to the jury and not dismissed. We address both types of

claims, assuming that defendants' motion for a directed verdict heard at the end of the trial preserves the sufficiency of the evidence claims for our review. *Napier v Jacobs,* 429 Mich 222, 230; 414 NW2d 862 (1987). Since similar standards are applied in both instances we will consider these claims first. In both instances we view the evidence in the light most favorable to the plaintiffs. If plaintiffs established a prima facie case and there were material issues of fact upon which reasonable minds could differ, the court did not err in presenting the issues to the jury. *Beasley v Washington,* 169 Mich App 650, 659; 427 NW2d 177 (1988). Similarly, if having given plaintiffs the benefit of every reasonable inference that can be drawn from the evidence we find that reasonable minds could differ, we cannot say the evidence was not sufficient to sustain the verdict. *Boggerty v Wilson,* 160 Mich App 514, 522; 408 NW2d 809 (1987).

The trial court did not err in not dismissing the claims based on a violation of the administrative rule regarding the LEIN procedure or on abuse of process. As to both, plaintiffs argued that Cole's actions were taken to harass Mitchell and not for the criminal justice purposes intended by the LEIN procedure. The evidence indicates that the LEIN was run after Mitchell left the premises. While there may have been a duty to confirm the information "immediately," 1981 AACS, R 28.5405(1), Cole waited six days before taking any action on the LEIN information. There was no indication that Mitchell was a threat to security when Pogates made the call which resulted in her arrest. The facts could indicate that Cole arranged the meeting on February 24, 1983, to harass or embarrass Mitchell, an action that could be interpreted as improperly using the LEIN information for per-

sonal purposes, contrary to 1981 AACS, R
28.5208(3). Even if we were to assume that the
regulations had not been violated and that the
LEIN process was properly initiated, a review of all
the actions regarding the LEIN at least raised a
jury question as to whether there was an ulterior
purpose and a misuse of the process, the elements
of an abuse of process claim. *Friedman v Dozorc,*
412 Mich 1, 30, n 18; 312 NW2d 585 (1981). Hold-
ing onto the information for six days and then
reporting it shortly before Mitchell arrived corrob-
orates the improper ulterior purpose. While it can
be argued that Cole utilized the information in a
manner arguably consistent with procedure, the
jury could also find that it was used for the im-
proper purpose of harassing and intimidating the
plaintiffs.

Nor can we say that the jury erred in finding a
conspiracy between defendants Pogates and Cole
to misuse the LEIN process. Viewing the evidence
in the light most favorable to the plaintiffs one
could reasonably infer that Pogates knew of Cole's
intention to harass and intimidate the plaintiffs
and that he either encouraged or ratified Cole's
actions when he phoned the state police but did
not inform them that the outstanding warrant was
for a traffic violation. This would support a finding
of common-law conspiracy. *Rosenberg v Rosenberg
Bros Special Account,* 134 Mich App 342, 354; 351
NW2d 563 (1984).

As to the defendants' argument on the federal
claims, defendants first argue that neither the law
nor the facts support a finding of a violation of
First Amendment rights. The First Amendment
protects an individual's right to speak freely, advo-
cate ideas, and associate with others. It protects
the right of an association to engage in advocacy
on behalf of its members. *Smith v Arkansas State*

*Highway Employees Local 1315,* 441 US 463, 464; 99 S Ct 1826; 60 L Ed 2d 360 (1979). Unlike the situation in *Smith,* this is not an example of defendants simply ignoring the union. This is more like the situation where defendants are acting to prohibit plaintiffs from joining together through their union to advocate particular views or retaliating for the exercising of those rights. See *Smith,* p 465. Defendants have not indicated any authority showing that these actions cannot be a violation of First Amendment rights. As a matter of law, the court did not err in not dismissing the claim. Furthermore, this record indicates that defendants' actions could be interpreted as discouraging union membership or representation for the purpose of depriving the plaintiffs of their rights to freedom of speech and association. On the basis of the record, there was sufficient evidence for the jury to have found a violation.

The other two federal claims based on the federal Civil Rights Act are challenged on the basis that the jury's findings are erroneous. In order to establish a claim under 42 USC 1985(3) plaintiffs must prove: (1) the existence of a conspiracy, (2) intent to deny plaintiffs the equal protection of the laws or of equal privileges and immunities under the laws, (3) injury or deprivation of a federally protected right of plaintiffs, (4) an overt act in furtherance of the object of the conspiracy, and (5) some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Griffin v Breckenridge,* 403 US 88, 102-103; 91 S Ct 1790; 29 L Ed 2d 338 (1971). In order to establish a claim under 42 USC 1986, plaintiffs must show that someone had the power to prevent the conspiracy and did not. The above analysis indicates sufficient evidence for the jury to have found the first four elements for the § 1985(3)

claim. There was evidence that Mitchell was treated differently because of her race or sex which could support a finding of race- or sex-based animus to support a finding on the fifth element. As to the § 1986 claim, defendants' only relevant authority indicates only that there must be a § 1985 claim. *Santistevan v Loveridge,* 732 F2d 116, 119 (CA 10, 1984). They have indicated no authority for the proposition that Pogates could not be liable both as a conspirator under § 1985 and because he did not use his position of authority to prevent the conspiracy under § 1986.

We therefore find that defendants' arguments regarding the dismissal of the claims discussed above are without merit.

Having found that a directed verdict was not required on any of the above claims, we turn to plaintiffs' cross-appeal of the court's granting a directed verdict on the union's claim. Plaintiffs challenge this decision arguing only that the facts do support MSEA's claim. While plaintiffs argue that the evidence shows that the incident affected MSEA's reputation and discouraged union activity, the evidence they direct us to would at most go to showing that Mitchell was damaged by defendants' actions. In the absence of any evidence indicating the union was harmed, we cannot say the court erred in dismissing this claim.

Next, defendants Pogates and Cole argue that they were entitled to qualified immunity on the federal claims because their conduct did not violate clearly established constitutional rights. This argument relies on the standard set forth in a United States Supreme Court case, *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982), recently discussed by the Michigan Supreme Court in *Guider v Smith,* 431 Mich 559; 431

NW2d 810 (1988). In determining if there is quali-
fied immunity, the court considers:

> 1) whether the alleged conduct establishes a
> constitutional violation, and 2) whether the consti-
> tutional standard was clearly established at the
> time in question. . . . If the undisputed facts show
> that the defendant's conduct violated no clearly
> established constitutional standards, qualified im-
> munity applies as a matter of law. However, if the
> law was clearly established, the immunity defense
> ordinarily would fail unless the official demon-
> strates extraordinary circumstances, and can
> prove he neither knew nor should have known the
> relevant legal standard, in which case the defense
> should be sustained. [*Guider,* p 568.]

Defendants argue that there is no constitutional
right to be free from a valid arrest warrant. While
that may be true, the claim against them is that
their conduct violated plaintiffs' First Amendment
rights. The constitutional rights to freedom of
speech, freedom of association, and freedom of
assembly are clearly established. As discussed ear-
lier, the evidence indicates that defendants' con-
duct violated those First Amendment rights. The
facts do not indicate that a reasonable person in
defendants' position could have believed his ac-
tions were consistent with the law. *Guider,* p 570.
The court did not err in not recognizing qualified
immunity in these circumstances.

We next turn to defendants' arguments concern-
ing the damages and attorney fees awarded. We
note that a hearing was convened regarding attor-
ney fees, but the court declined to consider these
issues because it lacked jurisdiction to do so since
the claim of appeal had already been filed. MCR
7.208; *Vallance v Brewbaker,* 161 Mich App 642,
648; 411 NW2d 808 (1987). Since the issues here

have to do with possible amendments to the amount already awarded, it would have been more helpful for the lower court to have attempted to resolve these issues below, *Vallance, supra,* and possibly avoid the remand we now must order on these issues. Regarding damages, the damages were trebled under MCL 600.2907; MSA 27A.2907, which entitles a plaintiff to treble damages for malicious prosecution. Both parties focus their arguments on the applicability of *Camaj v S S Kresge Co,* 426 Mich 281; 393 NW2d 875 (1986), and whether this case comes under the limited prospective effect of its ruling defining the availability of treble damages in a malicious prosecution claim. However, neither party has shown that treble damages are appropriate in this abuse of process claim. Abuse of process is not the same as malicious prosecution. *Early Detection Center, PC v NY Life Ins Co,* 157 Mich App 618, 627-629; 403 NW2d 830 (1986). The statute in question does not apply to abuse of process claims. *Peisner v Detroit Free Press, Inc,* 68 Mich App 360, 365-366; 242 NW2d 775 (1976). Therefore, the damages should not have been trebled and we remand so that the court may make the necessary adjustment.

Regarding attorney fees, defendants raised an issue concerning Mitchell's claim under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, which appears to challenge only whether the award of attorney fees under this act was appropriate. We note initially that the court awarded three separate amounts for attorney fees under three separate provisions: (1) 42 USC 1988, (2) the Civil Rights Act, and (3) MCR 2.403(O). The awards were not cumulative and the order specifically states that plaintiffs were entitled to the highest amount only, which was awarded under 42 USC 1988.

As to the merits of their civil rights claim, defendants are correct that if the special verdict form indicates that this claim was not upheld then the fees should not have been awarded. In this instance, the lower court is in the best position to resolve defendants' claims regarding the special verdict form and whether the relevant instruction was given. If the trial court determines that the jury did not find a civil rights violation we note that the sole effect appears to be a need to correct the order regarding fees.

Attorney fees were also awarded to plaintiffs pursuant to 42 USC 1988, which provides that "the court, in its discretion, may allow . . . a reasonable attorney's fee" to the prevailing party in a cause brought under §§ 1983, 1985, or 1986. The United States Supreme Court has found that a fee may be upwardly adjusted if the "fee applicant" can show that such an adjustment is necessary. *Blum v Stenson,* 465 US 886, 897-898; 104 S Ct 1541; 79 L Ed 2d 891 (1984). As a matter of law we cannot say that the court erred in enhancing the fee here. However, since it does not appear that any challenge to the reasonableness of the fee was reviewed by the trial court, this issue should also be addressed by it on remand.

The final issue in the circuit court action is defendants' challenge of the trial court's failure to give a requested jury instruction that would have supplemented the definition of intentional infliction of emotional distress. Our review of the instruction given indicates it adequately and fairly represented the applicable standard as set out in *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602-603; 374 NW2d 905 (1985). The requested supplement was not so necessary to a fair determination of the claim that failure to give it was error.

*Beadle v Allis,* 165 Mich App 516, 526; 418 NW2d 906 (1987).

## II

As to the Court of Claims case, both the Department of Corrections and the plaintiffs raise immunity questions. Initially, we note that the DOC did not waive any claim to immunity by failing to raise this as an affirmative defense in its first responsive pleading. Governmental immunity is not an affirmative defense, but a characteristic of government which prevents imposition of tort liability. The burden is on the plaintiff to plead affirmatively in avoidance of governmental immunity in stating its claim. *Meadows v Detroit,* 164 Mich App 418, 432; 418 NW2d 100 (1987). Governmental immunity was not waived here.

On the immunity claims themselves, contrary to plaintiffs' argument we find that the trial court was correct in recognizing immunity on the federal constitutional claims. Plaintiffs recognize that our Supreme Court has already determined that the state is not a "person" for purposes of a damage suit under 42 USC 1983. *Smith v Dep't of Public Health,* 428 Mich 540, 544; 410 NW2d 749 (1987). While plaintiffs disagree with that decision, *Smith* does preclude plaintiffs' claims brought under the federal Civil Rights Act.

We also find that plaintiffs' tort claims were barred by governmental immunity. In this case, the DOC could be vicariously liable only if the individual defendants, acting during the course of their employment and within the scope of their authority, committed a tort while engaged in a nongovernmental activity. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 625; 363 NW2d 641 (1984). That the defendants' specific

conduct resulted in a finding of individual liability is not determinative here. Instead, we look at the general activity involved, a LEIN check which the defendants were generally authorized to run to assist in the governmental function of maintaining security at the prison. Since the general activity here was an authorized governmental function, the trial court erred in not dismissing the tort claims on the basis of governmental immunity. *Smith, supra,* pp 606-610.

Plaintiffs further argue that their tort claims come under the nuisance exception to governmental immunity, citing *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978). It does not appear that this theory was ever raised prior to appeal and we will not address it now. *State-William Partnership v Gale,* 169 Mich App 170, 181; 425 NW2d 756 (1988). In any event, it is not clear from plaintiffs' brief that this exception is applicable in these circumstances. *Rosario, supra; Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988).

We also find that plaintiffs' cross-appeal of the Court of Claims' dismissal of their Civil Rights Act claim is without merit. The circuit court has exclusive jurisdiction over civil rights claims. *Baxter v Gates Rubber Co,* 171 Mich App 588, 591; 431 NW2d 81 (1988). That the Court of Claims has exclusive jurisdiction over claims against the state does not divest the circuit court of that statutory jurisdiction. The trial court sitting as a Court of Claims did not err in dismissing the claim for lack of jurisdiction. *Littsey v Wayne State Univ Bd of Governors,* 108 Mich App 406, 412-414; 310 NW2d 399 (1981).

The DOC also raises a number of issues regarding the sufficiency of the evidence. Having already found that governmental immunity required dis-

missal of those claims we need not consider whether the claims based on misuse of the LEIN, abuse of process, intentional infliction of emotional distress, and conspiracy should have been dismissed.

The final issue in the Court of Claims case is the DOC's argument on the trebling of damages. Given our finding on governmental immunity, it appears, as noted by plaintiffs, that the remaining claims are those based on violation of the state constitution. Immunity is not available in a state court action where the allegations concern the state's violation of rights conferred by the Michigan Constitution. *Burdette v Michigan,* 166 Mich App 406, 408-409; 421 NW2d 185 (1988). As noted by plaintiffs, defendant never moved for a directed verdict on these claims. Nor has defendant raised these claims on appeal. As discussed above, trebling the damages would only have been available if plaintiffs had been successful on a claim for malicious prosecution. MCL 600.2907; MSA 27A.2907. Therefore, this damage issue is also remanded to the trial court for the appropriate adjustment.

### III

In summary, as to the circuit court action, we affirm the determinations of the trial court denying defendants' motion for directed verdicts, denying the individual defendants qualified immunity, granting a directed verdict on MSEA's claim, and refusing to give the supplemental instruction. We remand, however, for the court's consideration of the damages and attorney fees issues as discussed above.

In the Court of Claims action, we find that all the federal claims and the state tort claims should have been dismissed on the grounds of governmen-

tal immunity, thereby affirming and reversing determinations of the trial court. We agree that the Civil Rights Act claim was properly dismissed on the basis of lack of jurisdiction. We remand, however, for the court's consideration of the damages issue discussed above.

Affirmed in part, reversed in part, and remanded for the limited purposes discussed above.