POE v CITY OF DETROIT

Docket No. 98911. Submitted June 6, 1989, at Detroit. Decided August 21, 1989.

Eric Poe, while attempting to cross an intersection after alighting from a public bus owned by the City of Detroit and operated by Lawrence Sneed, suffered fatal injuries when he was struck by an automobile driven by Ernesto Cabello. Sneed had stopped the bus at the request of a passenger in a "no parking" zone that was not a designated bus stop. Mattie Poe, as personal representative of the decedent's estate, brought a wrongful death action in Wayne Circuit Court against Cabello, the City of Detroit, and Sneed. Prior to trial, plaintiff and Cabello settled for $50,000. The trial court, Richard P. Hathaway, J., following the close of plaintiff's proofs denied a motion for a directed verdict in favor of the remaining defendants. The jury returned a $1.3 million verdict in favor of plaintiff and the court entered a final judgment for $716,501.20, after deducting Cabello's settlement, accounting for the decedent's forty-five percent comparative negligence, and denying defendants' motion for a judgment notwithstanding the verdict. Defendants appealed.

The Court of Appeals *held:*

1. A common carrier owes a passenger a duty to discharge him from the conveyance at a reasonably safe place. However, once the passenger safely alights from the conveyance, the special carrier-passenger relationship ends and the passenger becomes an ordinary pedestrian to whom the carrier, along with other motorists, owes a duty to exercise due care in the operation of its vehicle. In this case, plaintiff's allegations of negligence by Sneed were based in large part on claimed violations of a statute and a Detroit ordinance relating to parking, and a Michigan Department of Transportation bulletin relating to stopping buses at passengers' requests at places other than a designated bus stop. However, a review of the

REFERENCES
Am Jur 2d, Carriers §§ 772-780; Negligence §§ 82 *et seq.*, 546 *et seq.*, 591 *et seq.*
See the Index to Annotations under Buses; Carriers; Pedestrians.

statute, ordinance and bulletin revealed that the statute and the bulletin were not violated under the circumstances in this case, and that the ordinance cannot be given effect since it conflicts with the statute. Thus, plaintiff failed in proving that Sneed breached a duty owed to decedent.

2. Even if Sneed had breached a duty, liability on his part cannot attach since it cannot be said that Sneed's negligence was a proximate cause of the decedent's death in view of the intervening negligence of both the decedent, in crossing the intersection, and Cabello, in driving his automobile.

3. The city is not liable since Sneed was not negligent. Even if Sneed were negligent, the facts in this case cannot support a finding of independent negligence by the city for negligent entrustment, or negligent hiring, retention, supervision and training.

Reversed.

1. NEGLIGENCE — DUTY.

The element of "duty" in a negligence action is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another; whether the law will impose such an obligation depends upon the relationship between the actor and the injured person; the court determines, as a matter of law, what characteristics must be present for a relationship to give rise to a duty and, thereafter, the jury determines whether the evidence establishes the elements of that relationship.

2. NEGLIGENCE — COMMON CARRIERS — DUTY TO PASSENGERS.

A common carrier owes a passenger a duty to discharge him from the conveyance at a reasonably safe place; however, once the passenger safely alights from the conveyance, the special carrier-passenger relationship ends and the passenger becomes an ordinary pedestrian to whom the carrier, along with other motorists, owes a duty to exercise due care in the operation of its vehicle.

3. NEGLIGENCE — PROXIMATE CAUSE.

When a number of factors contribute to producing an injury, one actor's negligence, as a matter of law, will not be considered a proximate cause of the harm unless it was a substantial factor in bringing about the injury; in determining whether the actor's negligence is a substantial factor, the following are considered: (1) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (2) whether the actor's conduct has

created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) the lapse of time.

4. NEGLIGENCE — INTERVENING CAUSE.

An intervening cause is one which comes into active operation in producing harm to another after the negligence of the defendant and may relieve the defendant from liability; the existence or nonexistence of an intervening or superseding cause is largely a matter of policy.

*Leonard D. McMahon, P.C.* (by *Leonard D. Mc-Mahon*), and *Conway & Wright, P.C.* (by *Daniel J. Wright*), of Counsel, for plaintiff.

*Donald Pailen,* Corporation Counsel, and *Joanne D. Stafford,* Assistant Corporation Counsel, for defendants.

Before: MICHAEL J. KELLY, P.J., and SHEPHERD and NEFF, JJ.

SHEPHERD, J. In this wrongful death action, defendants City of Detroit and Lawrence Sneed appeal as of right from a February 6, 1987, amended judgment of $716,501.20 and an order denying defendants' motion for judgment notwithstanding the verdict or new trial. We reverse.

This case stemmed from an automobile-pedestrian accident at about 2:30 P.M. on May 23, 1983. The pedestrian, thirteen-year-old Eric Poe, had just alighted from a bus at the northeast corner of West Outer Drive and Greenfield. The bus was owned by the defendant city and driven by defendant Sneed.

Sneed had pulled the bus to the curb on West Outer Drive, a few feet from the intersection, at the request of a passenger. The bus was stopped in a "no parking" zone, which was not officially designated as a bus stop. The official bus stop was on

the northwest corner of West Outer Drive, just past the intersection. All the passengers, including Eric Poe, safely alighted from the bus. Poe proceeded to walk to the corner facing Greenfield with two female acquaintances. Poe appeared to be observing traffic. He then turned and walked to the corner facing West Outer Drive. One of Poe's companions testified that Poe was trying to catch a bus on another corner, located diagonally from where Poe stood. Poe crouched down in a sprinter's position directly in front of Sneed's bus, which had not yet pulled away from the curb. Poe ran out into the street while the pedestrian signal was at least flashing "don't walk." As soon as Poe emerged from the cover of the bus, he was struck and killed by a vehicle driven by Ernesto Cabello at about forty-eight miles per hour.

In September, 1983, plaintiff commenced this action against Cabello. Plaintiff subsequently amended the complaint to add the city and Sneed as defendants. Plaintiff alleged negligence on the part of Sneed in stopping his bus in a "no parking" zone and negligence on the part of the city in entrusting the bus to Sneed and in hiring, training and supervising Sneed. Prior to trial, plaintiff and Cabello settled for $50,000.

Over the objection of defendants at trial, plaintiff asserted as an additional theory of liability that Sneed owed a duty to warn Poe of the danger he allegedly created by stopping in a "no parking" zone. Defendants' motion for a directed verdict at the close of plaintiff's proofs was taken under advisement and subsequently denied after the jury returned its verdict. The jury found both defendants negligent and that damages amounted to about $1.3 million. After deducting Cabello's settlement of $50,000 and Eric Poe's forty-five percent comparative negligence, the final verdict was

$716,501.20. Although defendants raise several issues on appeal, the issues we find dispositive pertain to the trial court's denial of defendants' motion for a directed verdict or judgment notwithstanding the verdict on all liability theories.

MCR 2.515 permits a party to move for a directed verdict at the close of the evidence offered by the opponent. When faced with such a motion, a court must view the evidence in a light most favorable to the nonmoving party and determine whether a prima facie case was established by the plaintiff. If there are material issues of fact upon which reasonable minds could differ, they are properly submitted to the jury. *Coy v Richard's Industries, Inc,* 170 Mich App 665, 672; 428 NW2d 734 (1988), lv den 432 Mich 856 (1989); *Beasley v Washington,* 169 Mich App 650, 659; 427 NW2d 177 (1988); *Schanz v New Hampshire Ins Co,* 165 Mich App 395; 418 NW2d 478 (1988), lv den 431 Mich 865 (1988). This same standard of examining the evidence in a light most favorable to the nonmoving party also applies in reviewing a motion for judgment notwithstanding the verdict brought subsequent to a jury verdict. *Schanz, supra; Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986).

To establish a prima facie case of negligence, plaintiff had a burden to prove (1) a duty owed to Eric Poe by defendants, (2) a breach of the duty, (3) causation and (4) damages. *Schanz, supra,* p 402. With regard to Sneed's liability, the issues raised concern the first three elements. Plaintiff's theory of liability, as read to the jury during the instructions, was as follows:

Michigan has a law [MCL 257.674(3); MSA 9.2374(3)], which says that a bus driver cannot stop to discharge a passenger at a place where an

official sign prohibits stopping or parking and where there is no bus stop. It is plaintiff's theory that defendant Sneed violated this law. Clearly, Mr. Sneed had a duty to know about the existence of departmental rules and orders and State laws and city traffic laws regulating his driving conduct. Not only did Mr. Sneed violate State Law, City Law and D.O.T. [Department of Transportation] Order #8883 in letting Eric Poe off where he did, Mr. Sneed did not warn Eric to be extremely careful in doing so as required by the Department of Transportation Order.

It is plaintiff's theory that defendant Sneed's violation of the State Law and City Law is evidence of his negligence and that such negligence was a proximate cause of Eric Poe's death because Eric would not have been crossing at that corner and would not have had his view obstructed by the bus and thereafter killed but for the negligence of Defendant Sneed.

Furthermore, it is plaintiff's theory that the departmental rules of the Department of Transportation reflect the standard of care and caution a reasonably careful bus driver should have, and that defendant Sneed's violation of certain of these rules (i.e. Order #8883) is evidence of his negligence, and that such negligence was a proximate cause of Eric's death.

On appeal, defendants contend that a directed verdict should have been granted on the question of whether Sneed had any duty to warn Eric Poe, either before or after leaving the bus, of the danger of crossing the street. We agree.

Duty has been defined as an obligation to which the law will give recognition and effect to conform to a particular standard of conduct towards another. Whether or not the law will impose such an obligation depends on the relationship between the actor and the injured person. It is for the court to determine, as a matter of law, what characteristics

must be present for a relationship to give rise to a duty. *Schanz, supra,* p 402. Questions of fact may then arise as to whether the characteristics exist. *Id.*

Here, the relationship between Sneed and Eric Poe commenced as one between a common carrier and a passenger. As such, Sneed had an affirmative duty to discharge Eric Poe in a reasonably safe place. *Jaxson v Detroit,* 379 Mich 405, 410; 151 NW2d 813 (1967). However, a common carrier is not an insurer of a passenger's safety, *Takacs v Detroit United Railway,* 234 Mich 42; 207 NW 907 (1926), and courts have been reluctant to hold a common carrier liable for injuries sustained by a passenger when caused by vehicles moving in traffic. *Paultanis v Nutt,* 342 Mich 335; 69 NW2d 825 (1955). The rationale for this rule is that the alighting passenger is in a much better position to guard against the dangers of moving vehicles. *Id.,* p 344.

Hence, it has been held that a common carrier has no duty to warn passengers of the danger of traffic on a city street. *Paultanis, supra,* and see *Feldman v Howard,* 10 Ohio St 2d 189; 226 NE2d 564 (1967); *Cavazos v Geronimo Bus Lines, Inc,* 56 NM 624; 247 P2d 865 (1952). Further, once the passenger safely alights, the special carrier-passenger relationship ends and the passenger becomes an ordinary pedestrian. See 13 CJS, Carriers, § 565, p 1073; *Feldman, supra,* p 192.

The evidence, here, is uncontroverted that thirteen-year-old Eric Poe safely alighted from the bus and was free to choose how to proceed to his next destination. Poe's status, when he crouched in front of the bus in a sprinting position, was merely that of a pedestrian. The intersection was protected by four traffic and pedestrian walk/don't walk signs. Although Sneed observed Poe's move-

ments, neither this circumstance nor the other proofs offered by plaintiff establish any circumstances that would give rise to a duty by Sneed to warn Poe, as either a passenger or pedestrian, of the danger of crossing the street at the intersection. As for Bulletin No. 8883, relied on by plaintiff in her theory, this internal directive to employees provides that "[o]perators should warn passengers alighting at other than designated coach stops to be extremely careful in doing so." The language is clear that the warning only pertains to the act of alighting and, hence, any failure by Sneed to warn would not be a basis for imposing liability for the automobile accident.

We conclude that Sneed could be held liable only if he breached a duty owed to Poe as a pedestrian. It seems clear that a motor vehicle operator, such as Sneed, owes a duty to pedestrians to exercise due care, i.e. to follow safety rules. *Sweet v Ringwelski,* 362 Mich 138; 106 NW2d 742 (1961). Here, the particular standard of care plaintiff sought to establish was that contained in a statute, city ordinance and the Department of Transportation's own rules and regulations for bus drivers. The conduct that plaintiff asserts was negligent was the act of placing the bus so as to obstruct Poe's view of traffic. Although defendants challenge plaintiff's theory on various grounds, the issue we find dispositive is defendant's claim that plaintiff failed to prove any violation of a statute, ordinance or rule. While defendants did not specifically raise this issue in their motion for a directed verdict, it was raised in the motion for judgment notwithstanding the verdict and, hence, is properly before us. The trial court erred in denying the motion.

The statute in question, MCL 257.674; MSA 9.2374, establishes a civil infraction for prohibited

parking.[1] The two prohibited places of parking at issue in this case are described by the statute as follows:

> (1) A vehicle shall not be parked, except if necessary to avoid conflict with other traffic or in compliance with the law or the directions of a police officer or traffic-control device, in any of the following places:
>
>           *   *   *
>
> (f) Within 20 feet of a crosswalk, or if there is not a crosswalk, then within 15 feet of the intersection of property lines at an intersection of highways.
>
>           *   *   *
>
> (n) At a place where an official sign prohibits stopping or parking.
>
>           *   *   *
>
> (3) A bus, for the purpose of taking on or discharging passengers, may be stopped at a place described in subsection (1)(b), (d), or (f) or on the roadway side of a vehicle illegally parked in a legally designated bus loading zone. A bus, for the purpose of taking on or discharging a passenger, may be stopped at a place described in subsection (1)(n) if the place is posted by an appropriate bus stop sign, except that a bus shall not stop at such a place if the stopping is specifically prohibited by the responsible local authority, the state transportation department, or the director of the department of state police.

With regard to subsection (1)(f), the evidence here, when viewed most favorably to plaintiff, establishes no violation for the reason that the exception in subsection (3) applies to the bus stop. Plaintiff's assertion that the jury could have rea-

[1] Parking means "standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs." MCL 257.38; MSA 9.1838.

sonably found that Sneed was making a layover rest stop is without merit. While Sneed did indicate that the last stop on his route was at the official bus stop across the intersection, the layover rest stop was 1½ blocks away. Sneed was never asked why he was still at the curb when Eric Poe stepped in front of his bus. Sneed estimated that he had been there only forty seconds. While plaintiff did show that Sneed used the word "park" in his prior deposition testimony, Sneed explained what he meant by that word at trial, i.e., that it was only a stop, and there is nothing in the record to indicate that Sneed intended to use the word "park" within its special legal meaning at the time of the deposition.

Even if we were to consider the defendants' opposing proofs, specifically the testimony of the other bus driver who observed the accident, this would not create any factual issue for the jury regarding whether Sneed stopped or parked within the meaning of the statute. That bus driver recalled that Poe was one of three passengers who lingered for a short time on Sneed's bus before alighting and that Poe proceeded directly to the front of the bus. She estimated that the bus was stopped two to three minutes before the accident, although she was not paying a lot of attention to the bus until the accident took place and described the entire event as occurring "real fast." In sum, when viewed most favorably to plaintiff, the evidence showed only that Sneed was making a courtesy stop at the request of a passenger and that the stop was lawful under subsection (3) of the statute.[2] To say that Sneed had stayed excessively

[2] Unlike the statute, the Detroit ordinance to be discussed *infra* defines the word "stopping" in § 55-1-1. Stopping means "the stopping of a vehicle to load or unload passengers for a period not to exceed three (3) minutes . . . ." The other bus driver's estimate of two to three minutes clearly comes within this definition.

long so as to constitute "parking" or a layover rest period would be mere speculation based on this record.

As for the other prohibited parking place at issue in this case, specifically the prohibition under § (1)(n) of parking at a place where an official sign prohibits "stopping or parking," the evidence presented, when viewed most favorably to plaintiff, fails to demonstrate any violation for the reason that the exception in § (3) again applies. We reject plaintiff's assertion that the exception applies only where a bus stop sign is posted. Such a construction would render the last clause in § (3) ineffective. It is a rule of statutory construction that no phrase, clause or words in a statute should be ignored in construing it; effect must be given to every part. *Madary v Engel,* 111 Mich App 517, 520; 314 NW2d 676 (1981).

Giving effect to the last clause of § (3), we conclude that our Legislature did not intend to prohibit a bus from stopping to take on or to discharge passengers where, as here, a sign prohibits "parking" but is silent as to stopping. A bus stop sign under these circumstances is not required.

Based on the foregoing, reasonable minds could not conclude that the statute was violated and, hence, the question of whether the statute was violated should not have been submitted to the jury.

With regard to the ordinance, we note that the jury was only instructed as to § (5) of Detroit Ordinance 55-6-2, which states:

No operator shall park, stand or stop a vehicle, except when necessary to avoid conflict with law or other traffic or in compliance with the directions of a police officer or traffic control devices, in any of the following places:

* * *

(5) Within twenty (20) feet of a crosswalk, or, if none, then within fifteen (15) feet of the intersection of property lines at an intersection of highways;

Although the ordinance generally parallels the statute, it is broader inasmuch as it prohibits both parking and stopping within twenty feet of a crosswalk. The ordinance conflicts with the statute because it contains no exception for bus stops. MCL 257.605; MSA 9.2305 states that a "local authority shall not adopt, enact, or enforce a local law, charter provision, ordinance, rule, or regulation in conflict with this chapter." The ordinance conflicts with the statute and, hence, is not enforceable. Accordingly, the existence of this ordinance did not aid plaintiff in establishing a prima facie case of negligence against Sneed.

Aside from the statute and ordinance, the other proofs referred to by plaintiff to establish that Sneed failed to conform his conduct to a particular standard of care were the Department of Transportation's own rules and regulations. In particular, plaintiff referred to Bulletin No. 8883, which in pertinent part stated:

When requested by passengers, operators *will stop* to permit them to alight at other than designated coach stops *between the hours of 7:00 PM and 5:00 AM and all day Sundays and holidays* provided that the coach can be stopped in such a position to insure that the passengers can alight safely. [Emphasis in original.]

It is, however, clear from the unambiguous language of the bulletin that it only mandates courtesy stops when requested by customers between the hours of 7:00 P.M. and 5:00 A.M. The bulletin does not prohibit a bus driver from making cour-

tesy stops at other times and there is no evidence of any rule or regulation of the Department of Transportation that prohibited this practice.

In sum, we conclude that plaintiff failed to prove that Sneed violated any particular standard of care owed by Sneed to pedestrian Eric Poe when he stopped in the no parking zone at the corner of Greenfield and West Outer Drive. The stop was lawful, and the purpose for the stop, i.e., a courtesy stop, was permitted.

Even if it could be said that plaintiff proved that Sneed breached a duty owed to Eric Poe, the case still should not have been presented to the jury for the reason that plaintiff failed to prove both requirements of causation. That the bus was a cause in fact of the accident because it obstructed the view of pedestrian Eric Poe was clearly demonstrated. However, the requirement of legal or proximate causation is a separate matter that was not proved. Although legal or proximate causation is often stated in terms of foreseeability, *Richards v Pierce,* 162 Mich App 308, 316-317; 412 NW2d 725 (1987), the question of whether there is proximate causation, like the question of duty, is essentially a problem of law. *Moning v Alfono,* 400 Mich 425, 440; 254 NW2d 759 (1977). When a number of factors contribute to producing injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in bringing about the injury. *Brisboy v Fibreboard Corp,* 429 Mich 540, 547-548; 418 NW2d 650 (1988), citing 2 Restatement Torts, 2d, § 431, p 428. Factors to be considered in determining whether the negligence is a substantial factor are:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;

(c) the lapse of time. [2 Restatement Torts, 2d, § 433, p 432.]

An intervening cause, meaning one which comes into active operation in producing harm to another after the negligence of the defendant, may relieve a defendant from liability. *Coy, supra,* p 670. The existence or nonexistence of an intervening or superseding cause is largely a matter of policy. *Heitsch v Hampton,* 167 Mich App 629, 632-633; 423 NW2d 297 (1988), lv den 431 Mich 875 (1988).

Here, there are three factors which contributed to produce the harm to Eric Poe: (1) the obstruction of view created by the presence of the bus; (2) the driver of the automobile that struck Eric Poe at forty-eight miles per hour; and (3) Eric Poe's conduct in running into the street against a pedestrian signal that was, viewed most favorably to plaintiff, flashing "don't walk." The fact that a bus obstructs the view of pedestrians and motor vehicles is one that is obvious and always present when a bus is on the highway. Unless acted upon by other forces for which the bus driver is not responsible, i.e., the pedestrian, this obstacle is harmless. Under these circumstances we must conclude that Sneed's actions were not a substantial factor in producing the harm suffered by Eric Poe. As a matter of law, Sneed's act of parking the bus at the curb was not a proximate cause of Eric Poe's accident with the automobile. The accident, while tragic, was caused by the intervening, independent negligence of Eric Poe and the driver of the automobile. Compare *Sanford v Bi-State Devel-*

*opment Agency,* 705 SW2d 572, 575 (Mo App, 1986) (no liability for fourteen-year-old accident victim injured where injuries proximately caused by victim's independent, intervening act of crossing the street after leaving bus).

On the basis of the foregoing, we reverse the trial court's order denying defendant Sneed's motion for directed verdict and judgment notwithstanding the verdict in favor of plaintiff. In sum, Sneed owed no duty to warn Eric Poe of the dangers of crossing the street. Further, Sneed's act of stopping the bus where he did was not unlawful and, in any event, was not the proximate cause of Eric Poe's accident.

Since Sneed was not negligent, it follows that the city also has no liability. Even if Sneed were negligent, we would find no independent negligence on the part of the city under the negligent entrustment and negligent hiring, retention, supervision and training theories raised by plaintiff.

Viewed most favorably to plaintiff, the proofs showed only that Sneed's license had been suspended at least seven years prior to the accident for a reason related to the failure to pay a fine, that Sneed had previous experience as a bus driver when hired in 1979, that Sneed was a licensed driver when hired and continuing throughout his employment with the city, that Sneed was provided with five days of classroom training followed by eight weeks of supervised road training upon being hired, and that Sneed received a reprimand for his driving involving three minor accidents during his employment with the city. Plaintiff presented no evidence that the city was deficient or otherwise departed from an appropriate standard of care for the transportation industry in hiring, training and supervising Sneed. Nor did

plaintiff prove that Sneed was an incompetent bus driver at the time of the accident. As a matter of law, having given careful consideration to the trial record, we conclude that plaintiff failed in her burden to present a prima facie case of negligence on the part of the city under any of the theories advanced. See *Chapman v Buder,* 14 Mich App 13, 23; 165 NW2d 436 (1968), lv den 381 Mich 798 (1969), and *Muscat v Khalil,* 150 Mich App 114, 121; 388 NW2d 267 (1986), lv den 425 Mich 864 (1986) (negligent entrustment); *Smith v Merrill Lynch,* 155 Mich App 230, 235; 399 NW2d 481 (1986) (negligence in hiring and supervising).

To conclude, we reverse the judgment in favor of plaintiff for the reason that plaintiff failed to establish a prima facie case of negligence on any of the theories advanced against Sneed and the city. In light thereof, we do not address the other issues raised by defendants. As for the defendant city's claim of governmental immunity, we note only that this issue was not raised or addressed in the trial court and, thus, is not properly before us.

Reversed.