FROHMAN v CITY OF DETROIT

Docket No. 93847. Submitted December 21, 1988, at Detroit. Decided
    December 18, 1989.

Roland Frohman, Jr., was injured when the automobile which he
    was driving was hit by a vehicle which was speeding through
    an intersection against a red light. The vehicle which hit
    Frohman had been pursued by several Detroit Police Depart-
    ment vehicles prior to the accident. Roland and Alice Frohman,
    individually and as guardians of Roland Frohman, Jr., brought
    a negligence action in Wayne Circuit Court against the City of
    Detroit, Sergeant Donald Chalmers of the Detroit Police De-
    partment and two other police officers. Plaintiffs alleged, and at
    trial presented proofs that showed, that Chalmers, in response
    to a radio alert, had joined the chase of the subject vehicle, had
    pursued the vehicle at high speed along Seven Mile Road and
    had, when it became evident that the pursuit would take him
    through the intersection with Livernois against a red light,
    discontinued the high speed pursuit, slowed down and turned
    off his siren and flashing lights. Plaintiffs alleged negligence on
    Chalmers' part by reason of his decision to engage in high
    speed pursuit and his decision to discontinue pursuit and to
    turn off the warning lights and siren when he became aware
    that the pursued vehicle would enter the intersection against
    the red light. Defendants moved for a directed verdict on the
    basis of governmental immunity and on the basis that, as a
    matter of law, Chalmers' actions were not a proximate cause of
    the injury to Roland Frohman, Jr. The trial court, William J.
    Giovan, J., denied the motion for a directed verdict, holding
    that the motor vehicle exception to statutory governmental
    immunity applied and the question of proximate causation was
    for the jury to decide. The jury returned a verdict in favor of
    plaintiffs in the amount of $2,250,000. Defendants moved for
    judgment notwithstanding the verdict, for a new trial or for

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
    §§ 470, 471, 474.
See the Index to Annotations under Governmental Immunity or
    Privilege; Police and Law Enforcement Officers.

remittitur. The trial court denied those motions. The City of Detroit and Donald Chalmers appealed.

The Court of Appeals *held:*

1. The decisions by Chalmers to commence, continue and terminate the pursuit of the subject vehicle were discretionary-decisional acts which were made in good faith and within the scope of his employment and authority. Accordingly, the trial court erred in denying a directed verdict in favor of Chalmers on the basis of governmental immunity.

2. While Chalmers is immune from liability on the basis of governmental immunity, the City of Detroit is not protected by governmental immunity because the motor vehicle exception to governmental immunity would apply if Chalmers operated his motor vehicle in a negligent fashion and such operation was a proximate cause of the injury to Frohman. A jury could properly find on the proofs adduced at trial that Chalmers' operation of his vehicle was negligent and was a proximate cause of the accident.

3. The trial court properly denied the motion for remittitur, since it cannot be said that the jury's verdict was greater than the highest amount the proofs would support.

Affirmed in part; reversed in part.

MacKenzie, P.J., concurred in the result only.

1. GOVERNMENTAL IMMUNITY — POLICE OFFICERS.

A decision made by a police officer in good faith and in the course of his employment and authority with respect to commencing, continuing or terminating the pursuit of a motor vehicle believed to be involved in a criminal activity is a discretionary-decisional act such that the officer is rendered immune from personal liability for any damages arising out of any negligence by the officer in the making of the decision or in giving effect to that decision.

2. GOVERNMENTAL IMMUNITY — MOTOR VEHICLES — MUNICIPAL CORPORATIONS.

A municipal corporation is not afforded statutory governmental immunity with respect to injuries which are proximately caused by the operation of a police vehicle; even though the officer himself may be immune from personal liability for injuries arising out of his decision to pursue a vehicle believed to have been involved in criminal activity, the municipality remains liable for injuries proximately caused by the officer's operation of the vehicle by reason of the motor vehicle exception to statutory governmental immunity (MCL 691.1405; MSA 3.996[105]).

*Zeff and Zeff & Materna* (by *Michael T. Materna*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), for plaintiff.

*Donald Pailen,* Corporation Counsel, and *William L. Woodard* and *Linda Fegins,* Assistant Corporation Counsel, for the City of Detroit.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher.* (by *Michael J. Walter*), for Donald Chalmers.

Before: MacKenzie, P.J., and Cynar and M. E. Kobza,* JJ.

M. E. Kobza, J. Following a lengthy trial, a jury found that defendant Sergeant Donald Chalmers negligently operated his police vehicle and proximately caused the accident which resulted in serious injury to plaintiff Roland Frohman, Jr. The jury found defendant City of Detroit liable for Sergeant Chalmers' negligence. The jury awarded Frohman $2,250,000. The trial court found that defendants were not entitled to governmental immunity from liability and denied their motions for directed verdict and judgment notwithstanding the verdict or new trial. Further, defendants sought remittitur, which was denied. Defendants appeal as of right. We reverse in part and affirm in part.

On April 14, 1981, at approximately 10:10 P.M., Detroit Police Officers Zaharoff and Tatom saw a van parked illegally in Palmer Park. When the officers approached the van, Officer Zaharoff shined his flashlight in the window and observed a man and a woman engaged in sexual intercourse. When Officer Zaharoff tapped on the window, the man went to the driver's seat, started the van by reaching under the ignition area, backed into a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

crowd of onlookers, and drove from the area. As the van drove away, it ran over Officer Zaharoff's foot. The officers pursued the van. A dispatch officer informed them that the van was a stolen vehicle.

Officer Zobeck, who was operating a radar unit at Seven Mile Road and Ponchartrain, saw the van pass without its headlights on and clocked its speed at fifty-three miles per hour. Officer Zobeck pursued the van west on Seven Mile. Officer Zaharoff's vehicle passed Officer Zobeck's vehicle. Officer Zobeck, who at one point was traveling eighty miles per hour, dropped out of the chase.

Sergeant Chalmers was patrolling on Seven Mile when he heard Officer Zobeck's description of the chase. He positioned his vehicle in the center of the three westbound lanes and reduced his speed to five to ten miles per hour to determine the van's direction. He looked in his rearview mirror and saw the van approaching at a high rate of speed. The van swerved around his vehicle. Sergeant Chalmers activated his lights and siren, accelerated to thirty-five to forty miles per hour, and pursued the van. As the van approached the intersection of Seven Mile and Livernois, Sergeant Chalmers saw the traffic light turn red. Because he did not want to pursue the van through the intersection against the red light, Sergeant Chalmers deactivated his siren and slowed down. The van proceeded through the intersection and struck Roland Frohman, Jr.'s, vehicle, which had been traveling north on Livernois. Sergeant Chalmers then crossed the intersection and arrested the occupants of the van.

Several witnesses testified that the police vehicle was traveling very closely behind the van. The witnesses also testified that they did not hear a siren. A defense witness testified that skid marks

indicated that the driver of the van attempted to slow down before he went through the intersection. This witness also testified that the police vehicle could not have been traveling closely behind the van without either being involved in the accident or leaving skid marks, neither of which occurred. Plaintiffs' expert witness testified that Sergeant Chalmers' actions were unacceptable. This witness testified that, instead of slowing down, Sergeant Chalmers should have performed a rolling block to impede the van's progress and should have activated his lights and siren to warn other motorists of the danger. Finally, plaintiffs' expert testified that, if Sergeant Chalmers' entry into the chase constituted the forming of a caravan, or a line of three police vehicles, it was dangerous. Defendants' expert witness testified that Sergeant Chalmers did not violate any departmental rules when he slowed down, discontinued the pursuit, or deactivated his siren, but that slowing down to five to ten miles per hour and deactivating a siren when close to an intersection about to be entered by a speeding vehicle was foolish.

Alice Frohman testified that prior to the accident her son had been enrolled in the pre-dentistry program at Wayne State University, that the accident had left him comatose for at least five weeks, and that he suffered from impaired memory and speech. A physician testified that Roland Frohman, Jr., had sustained a closed head injury and would never be independent. The jury found defendants City of Detroit and Sergeant Chalmers liable, and awarded plaintiffs $2,250,000. The trial court had denied defendants' motion for a directed verdict and, in post-trial proceedings, denied their motion for judgment notwithstanding the verdict or new trial.

When reviewing the trial court's denial of a defendant's motion for directed verdict or motion for judgment notwithstanding the verdict, this Court must examine the evidence and all reasonable inferences that may be drawn therefrom in a light most favorable to the plaintiff. If reasonable jurors could honestly disagree, the motion should be denied. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury. *Matras v Amoco Oil Co,* 424 Mich 675, 681-682; 385 NW2d 586 (1986); *Kinzie v AMF Lawn & Garden, Inc,* 167 Mich App 528, 533; 423 NW2d 253 (1988), lv den 431 Mich 863 (1988).

This case deals with the liability of a government employee for tortious action taken while performing official duties, and the government agency's resulting liability. At trial, plaintiffs argued that Sergeant Chalmers negligently operated his vehicle and that these acts proximately caused Frohman's injuries. Plaintiffs also argued that the City of Detroit was liable for the negligence of its employee. In response to defendants' motion for a directed verdict on the grounds that they were immune from liability, the trial court stated that the automobile exception to governmental immunity, MCL 691.1405; MSA 3.996(105), as interpreted by *Fiser v Ann Arbor,* 417 Mich 461; 339 NW2d 413 (1983), reh den 418 Mich 1201 (1984), expressly allowed for liability. Because liability was created by statute, the trial court found it unnecessary to determine whether the acts upon which the claims of negligence were predicated were discretionary or ministerial in nature. The trial court adhered to this rationale in denying defendants' motion for judgment notwithstanding the verdict.

Defendants argue that pursuant to *Ross v Con-*

*sumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), and later cases, an employee whose discretionary acts constitute negligence may still be immune from liability. If the employee is negligent but immune, the government agency may be held liable if one of the exceptions to governmental immunity applies. However, defendants argue that Sergeant Chalmers' actions did not constitute negligence because his decision to pursue the van was discretionary, he did not violate his duty to the general public to pursue the van in a safe manner and his actions did not proximately cause Frohman's injuries. Furthermore, once Sergeant Chalmers decided to discontinue the pursuit, he owed no duty to Frohman to warn him of the approaching van. Defendants conclude that, because as a mattter of law Sergeant Chalmers' actions did not constitute negligence, the City of Detroit could not be held liable under the automobile exception to governmental immunity; therefore, the trial court erred in denying their motion for a directed verdict.

MCL 691.1407(1); MSA 3.996(107)(1) provides that a government agency "shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." However, the Legislature has provided for the abrogation of this immunity under certain narrow circumstances. MCL 691.1405; MSA 3.996(105) provides:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

In *Fiser, supra,* our Supreme Court stated that if the pursuit of a fleeing vehicle constituted the negligent operation of a police vehicle then, pursuant to MCL 691.1405; MSA 3.996(105), both the employee and the government agency would be liable for any injuries proximately caused by the pursuit. *Fiser, supra,* 417 Mich 469.

Acknowledging that the governmental immunity act does not address the circumstances under which individual employees are immune from tort liability, our Supreme Court undertook to do so in *Ross, supra.* The *Ross* Court recognized that, while a government agency may be liable for the tortious conduct of its employees under enumerated exceptions, individual immunity may exist even when governmental immunity has been abrogated. 420 Mich 630. The *Ross* Court held that lower level employees are immune from tort liability only when they are:

1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

2) acting in good faith; and

3) performing discretionary, as opposed to ministerial acts. [*Ross, supra,* 420 Mich 633-634.]

The *Ross* Court defined "discretionary-decisional" acts as "those which involve significant decision-making that entails personal deliberation, decision, and judgment," and "ministerial-operational" acts as those which "involve the execution or implementation of a decision and entail only minor decision-making." 420 Mich 592.

In *Canon v Thumudo,* 430 Mich 326; 422 NW2d 688 (1988), our Supreme Court built on its decision in *Ross, supra,* and concluded that every act which deviates from a professional norm does not consti-

tute a ministerial act which exposes the employee to liability. Discretion affords the actor the right to be wrong. The concept of immunity presupposes that acts complained of may have been negligently performed. Even if an employee's performance of discretionary-decisional acts constitutes negligence, that employee is afforded immunity from liability if the requirements set out in *Ross, supra,* are met. *Canon, supra,* 430 Mich 335.

Contrary to plaintiffs' contention and the trial court's conclusion, the analysis of defendants' liability does not end with MCL 691.1405; MSA 3.996(105) as interpreted by *Fiser, supra.* Pursuant to *Ross, supra,* and *Canon, supra,* both decided after *Fiser, supra,* Sergeant Chalmers is immune from liability even if, while acting in the course of his employment and the scope of his authority, he negligently performed discretionary-decisional acts. Pursuant to MCL 691.1405; MSA 3.996(105), the City of Detroit is liable for Sergeant Chalmers' acts only if he was negligent in the operation of his police vehicle.

Plaintiffs argue that the trial court properly denied Sergeant Chalmers' motion for a directed verdict because his acts of initiating pursuit, exceeding the speed limit by driving at speeds in excess of eighty miles per hour,[1] and deactivating his siren were ministerial in nature and constituted negligence. MCL 257.603; MSA 9.2303 states that, when an emergency vehicle is responding to an emergency call, the vehicle may exceed the speed limit as long as it does not endanger life or property by doing so. The vehicle must activate its emergency lights and siren when responding, un-

[1] To conclude that Chalmers was traveling at such speeds, plaintiffs rely on the testimony that Chalmers' vehicle was following closely behind the van, and that the van was traveling at speeds in excess of eighty miles per hour.

less circumstances dictate otherwise. MCL 257.632; MSA 9.2332 allows an emergency vehicle to exceed the speed limit as long as it does so with due regard for safety. Plaintiffs argue that Sergeant Chalmers' acts were ministerial in nature because he was required to obey the statutes and that Chalmers was not required to engage in any decision-making in order to do so. By negligently performing ministerial acts, Sergeant Chalmers became liable for Frohman's resulting injuries. Furthermore, citing *Fiser, supra,* 417 Mich 475-476, as support, plaintiffs argue that the jury properly concluded that Chalmers' acts of chasing the van at a high rate of speed, which caused the van to increase its own speed, and of subsequently deactivating his siren, which left Frohman with no warning of the approaching van, constituted the proximate cause of Frohman's injuries.

Defendants argue that Sergeant Chalmers' acts which plaintiffs contend constituted negligence due to their ministerial nature, including initiating pursuit, exceeding the speed limit, and deactivating the siren, were discretionary-decisional acts, and that he should have been afforded immunity; therefore, the trial court erred in denying his motion for a directed verdict. We agree.

In its consideration of *Zavala v Zinzer,* one of the nine companion cases decided in *Ross, supra,* our Supreme Court held that a police officer's determination of what action to take to best insure the safety of the general public is a discretionary-decisional act entitled to immunity. The Court stated:

> Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individ-

uals involved and the general public, the cessation
of unlawful conduct, and the apprehension of
wrongdoers. The determination of what type of
action to take, *e.g.*, make an immediate arrest,
pursue a suspect, issue a warning, await backup
assistance, etc., is a discretionary-decisional act
entitled to immunity. [420 Mich 659-660.]

See also *Ealey v Detroit,* 144 Mich App 324, 334-
335; 375 NW2d 435 (1985), lv den 424 Mich 902
(1986), cert den 479 US 931; 107 S Ct 401; 93 L Ed
2d 354 (1986).

We hold that, when Sergeant Chalmers initiated
pursuit, exceeded the speed limit (if he in fact did
so), discontinued pursuit, and signaled his discon-
tinuance by deactivating his siren, he was per-
forming discretionary as opposed to ministerial
acts. The discretionary nature of those acts affords
him immunity from tort liability. *Ross, supra,* 420
Mich 633-634. Sergeant Chalmers is entitled to a
directed verdict.

The City of Detroit's liability was predicated on
the exception to governmental immunity found at
MCL 691.1405; MSA 3.996(105), which allows a
government agency to be held liable for an em-
ployee's negligent operation of a government vehi-
cle. Plaintiffs argue that the trial court correctly
denied defendant city's motion for a directed ver-
dict on the grounds that the evidence was suffi-
cient for the jury to find that Sergeant Chalmers'
acts of pursuing the van at high speed and deacti-
vating his siren so as to leave Frohman without a
warning of the approaching van constituted a
breach of duty which proximately caused Froh-
man's injuries.

Defendants argue that the evidence was insuffi-
cient as a matter of law for the jury to find that
Frohman's injuries resulted from Sergeant Chal-
mers' negligent operation of his police vehicle;

therefore, the trial court erred in denying defendant city's motion for a directed verdict on the grounds that it was immune from liability. We disagree.

To establish a prima facie case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Sierocki v Hieber,* 168 Mich App 429, 433; 425 NW2d 477 (1988).

We hold that, under the circumstances of the instant case, the jury could have reasonably concluded that Sergeant Chalmers' acts of pursuing the van and thereafter discontinuing the pursuit proximately caused Frohman's injuries. Plaintiffs' expert testified that Sergeant Chalmers was negligent in deactivating his siren, in failing to perform a rolling block and in failing to enter the intersection ahead of the van with his siren and overhead oscillating lights activated to warn cross traffic. Defendants' expert testified that Sergeant Chalmers had behaved foolishly when he slowed his patrol car to five to ten miles per hour in a through lane prior to being passed by the van and when he deactivated his siren a block away from the intersection where the collision occurred. He agreed with plaintiffs' expert that entering the intersection ahead of the van was a viable alternative. Given this testimony, we believe that reasonable jurors could find that Sergeant Chalmers' failure to provide an audible warning to Frohman was a proximate cause of his injuries. The city was not entitled to a directed verdict or a judgment notwithstanding the verdict.

We affirm the trial court's denial of defendant city's motions for a directed verdict and judgment

notwithstanding the verdict. We do so reluctantly since we are bound to follow the principle enunciated in *Fiser v Ann Arbor, supra,* which we believe applies to liability issues against the city, if no longer against the employee-officer. The Court's position in pursuit cases was that a police chase could be a proximate cause, and the eluding vehicle was *not* merely an intervening cause. We reluctantly follow the *Fiser* rationale, which Justice RYAN, in his concurring opinion, expressed as follows:

> It is for the factfinder to determine whether the actions of the operators of the pursuing vehicles were causes in fact of the plaintiff's injuries. The reason the actions of the pursuing police officers may be proximate causes, and surely cannot be said as a matter of law *not* to be proximate causes, is:
> "The fact that an intervening act of a third person [Lehman] is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's [Officers Miller and Lunsford] negligent conduct is a substantial factor in bringing about, if
> "(a) the actor [Miller or Lunsford] at the time of his negligent conduct should have realized that a third person [Lehman] might so act, or
> "(b) a reasonable man knowing the situation existing when the act of the third person [Lehman] was done would not regard it as highly extraordinary that the third person [Lehman] had so acted, or
> "(c) the intervening act is a normal consequence of a situation created by the actor's [Miller or Lunsford] conduct and the manner in which it is done is not extraordinarily negligent." 2 Restatement Torts, 2d, § 447, p 478. [*Fiser, supra,* 417 Mich 479-480. Emphasis in original.]

Although the *Fiser* Court was careful to point

out that its opinion applied to the factual circumstances in that case, we hesitate to distinguish the case from our facts, because there are some similarities between that case and the present. We take issue with the underlying rationale, as expressed in the quotation from the Restatement, that it is to be "expected" that a person will flee from a police officer who is using a siren, or a police officer "should have realized," or a reasonable man would "not regard it as a highly extraordinary," or a fleeing vehicle is a "normal consequence" of a police officer's attempting to stop that vehicle. It is particularly difficult to accept the application of nebulous principles which require the law to consider flight as "normal," "expected," and "not highly extraordinary." Indeed, the usual expectation is quite the opposite and it is only in the highly extraordinary case that one flees, and usually for purposes of avoiding arrest for ulterior motives.

It is particularly onerous to follow *Fiser* in this situation where a police officer is struck by a person driving a stolen van who then attempts to escape, when all the officer originally wished to do was have the occupants of the van move from an area where parking was prohibited. The actions that followed endangered the life of Sgt. Chalmers, a defendant against whom the judgment was originally rendered. The officer, not knowing the direction of the pursuit, slowed down and occupied the center lane of travel in case he had to make a turn. The criticism of the officer's action bears an insignificant relationship in comparison to the prime cause of this accident.

More recent cases, *Derbeck v Ward,* 178 Mich App 38; 443 NW2d 812 (1989), and *Poe v Detroit,* 179 Mich App 564, 577; 446 NW2d 523 (1989), tell us that proximate cause, although initially a mat-

ter of law, is usually decided by the trier of fact. Proximate cause incorporates two concepts: (1) causation in fact, and (2) foreseeability. Causation in fact requires that the negligence be a "substantial factor" in producing the injury. The *Poe* opinion relies on 2 Restatement Torts 2d, § 431, p 428 to determine whether negligence is a "substantial factor." *Poe, supra,* pp 576-577. One of the factors considered is "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm . . . ." *Poe, supra,* p 577. These cases were decided in July and August, 1989, and were unavailable to guide the trial judge in his decision.

When a situation occurs, such as in the instant case, where an officer performs his legal duty by attempting to catch a fleeing lawbreaker, conducts the pursuit in what one may minimally call a negligent manner, and does not strike any vehicle with his vehicle, it is a remarkable legal principle that he can be said to have "caused" the resultant accident. To prevent the accident, all the fleeing driver need have done is stop. For the law to incorporate the presumption that a person will violate the law and to thereby hold that the officer's pursuing the violator is a proximate cause of an accident involving the fleeing person makes society the insurer of a risk no private corporation is required to assume under the law. Furthermore, the ordinary person in society has no such obligation or even a right to pursue such a lawbreaker, whereas a police officer has.

We conclude that in police pursuit cases an initial legal decision should be made to determine whether the nature of the pursuit is such as to create a question which must be submitted to a jury. We invite the Supreme Court or Legislature to establish a bright line test which provides that

a decision to engage in pursuit, as a matter of law, cannot be the basis of a claim of negligence. Only when the officer's driving *itself* is a direct cause of an injury would the question of negligence be submitted as a fact question to the jury. The determination should not turn on how the officer was conducting the pursuit but rather on what effect the manner in which the officer drove his vehicle had on the cause of the accident. *Fiser's* legal fiction, that a police pursuit of a lawbreaker should give rise to a legal expectation the lawbreaker will flee, should be re-examined, especially in light of *Ross, Poe* and *Derbeck* which were decided subsequent to *Fiser.*

Having said the above, we still feel compelled to follow case precedent until changed by the Supreme Court or the Legislature and not to interfere with those policy decisions made by authoritative bodies. Therefore, we feel bound to let stand the decision of the trial court with respect to the employing unit, the City of Detroit.

Finally, defendants challenge the propriety of the trial court's denial of their motion for remittitur. MRE 2.611(E)(1) provides that remittitur is appropriate if the verdict is "excessive," i.e., if the amount awarded is greater than "the highest amount the evidence will support." However, if the award falls reasonably within the range of evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained, the award should not be disturbed. *Precopio v Detroit,* 415 Mich 457; 330 NW2d 802 (1982). We review a trial court's denial of remittitur for an abuse of discretion. We will not disturb the trial court's decision absent such an abuse. *Palenkas v Beaumont Hospital,* 432 Mich 527, 533; 443 NW2d 354 (1989).

Defendants argue that the award is excessive

because plaintiffs failed to sustain the burden of proof necessary to demonstrate an award for future earnings which Frohman would have earned as a dentist but for the injuries sustained in the April, 1981, accident. The record reveals that the jury awarded Frohman a general verdict of $2,250,000 for his "total" injuries sustained. The record does not reveal, however, whether the jury included in its award any amount for lost earning capacity. We decline to engage in speculation as to this issue given our belief that the award is not excessive in light of the permanent nature of the noneconomic losses (including pain, disability and lost enjoyment) suffered by Frohman.

Frohman sustained a closed head injury. He remained comatose for six weeks following the accident. Intensive speech and physical therapy followed. Frohman, a former athlete, suffers from a loss of equilibrium, blurred vision and involuntary tremors. He cannot catch a ball. He tires easily. Picking up a dime from a flat surface or dialing a Touch-Tone telephone require great concentration. His speech remains slurred. As the result of his brain injury, Frohman suffers manic episodes during which he experiences depression, paranoia and hallucinations. He has imagined himself to be both the Son of God and Sitting Bull. Medicine helps control Frohman's psychological deficiencies. However, because Frohman has sustained a loss of deductive reasoning skills, he cannot be made to understand that he needs to take his medication. Accordingly, he does not always do so and his psychological condition deteriorates. Given Frohman's physical, psychological, emotional and intellectual deficiencies, it appears he will never lead a normal life, never to be self-dependent. It is unlikely that he will marry. It is also unlikely that he will ever work in an employ-

ment situation much better than a sheltered work-shop. He needs constant supervision so as not to hurt himself.

In *McKee v Dep't of Transportation,* 132 Mich App 714, 718-719; 349 NW2d 798 (1984), a child suffered extensive permanent brain damage in an automobile accident. As a result of her injuries, the child was rendered totally unemployable and required around-the-clock care. The trial court awarded the child a total of $5,124,160 for future wage loss, future medical treatment, and pain and suffering. The court later reduced the award to $4,000,000. *Id.,* p 727. A panel of this Court upheld the award, finding that it was supported by the evidence. *Id.,* p 728. However, this Court remanded to reduce the amount of future damages to present value. *Id.,* p 729.

In *May v William Beaumont Hospital,* 180 Mich App 728; 448 NW2d 497 (1989), a jury returned a verdict of $5,000,000 in favor of a child who sus-tained a head injury in birth. As a result of his injuries, the child suffered mild retardation, diffi-culties in speaking, and reduced social, educational and vocational opportunities. He will need con-stant guidance and support. However, the child was fully ambulatory, possessed no seizure disor-ders or hearing or visual problems and was normal in appearance, coordination, balance, posture, movement and strength. Upon reaching maturity, he would be able to live independently. The trial court ordered remittitur of the verdict to $106,696.01. This panel vacated the trial court's award and ordered judgment to be remitted to $1,265,843.84 plus statutory interest, and if not accepted by both parties, a retrial would be re-quired on that issue only. Therefore, there are distinct differences between this case and the *May* case.

Based upon a review of the record and the above cases, we are of the opinion that the jury verdict was supported by the evidence and was not excessive. The trial court correctly denied defendants' motion for remittitur.

Affirmed in part; reversed in part.

MacKenzie, P.J., concurred in the result only.